MICHAEL J. M. BROOK (BAR NO.139595)
LANAHAN & REILLEY LLP
600 Bicentennial Way, Suite 300
Santa Rosa, California  95403
Telephone:   (707) 524-4200
Facsimile:   (707) 523-4610
mbrook@lanahan.com

Attorneys for Plaintiffs San Francisco
Residence Club, Inc., Donahue,
O'Shea, LLC, Thomas P. O'Shea,
individually and as Trustee for the
Trust Of Thomas P. And Anne O'Shea

**E-filing**



# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO RESIDENCE CLUB, INC., DONAHUE, O'SHEA, LLC, THOMAS P. O'SHEA, individually and as TRUSTEE FOR THE TRUST OF THOMAS P. AND ANNE O'SHEA, <br><br> Plaintiffs, <br><br> v. <br><br> HENRY A. AMADO, SR., ABACUS FINANCIAL GROUP, LLC, WHITE SANDS ESTATES, LLC, EDWARD S. BRODA, ASPIRE REAL ESTATE, INC., ASPIRE INVESTMENTS, INC., GREGORY FISH and G.D. FISH & ASSOCIATES, <br><br> Defendants. | CASE NO.:   **2054** <br><br> COMPLAINT FOR: <br><br> **1. VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT, 15 U.S.C. § 78J, RULE 10B-5 THEREUNDER;** <br> **2. VIOLATION OF SECTION 20(A) OF THE SECURITIES EXCHANGE ACT, 15 U.S.C. § 78T;** <br> **3. VIOLATION OF SECTION 12(A)(2) OF THE SECURITIES ACT OF 1933, 15 U.S.C. § 77L(A)(2);** <br> **4. VIOLATION OF CAL. CORP. CODE § 25501;** <br> **5. VIOLATION OF CAL. CORP. CODE § 25504** <br> **6. VIOLATION OF CAL. CORP. CODE § 25504.1;** <br> **7. VIOLATION OF CAL. CIV. CODE § 3372;** <br> **8. UNFAIR AND DECEPTIVE PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 AND 17500;** <br> **9. DAMAGES FOR VIOLATIONS OF CAL. WELF. & INST. CODE § 15657.5;** <br> **10. FRAUD;** <br> **11. BREACH OF FIDUCIARY DUTY;** <br> **12. NEGLIGENT MISREPRESENTATION,** <br> **13. PROFESSIONAL NEGLIGENCE** |

## COMPLAINT

The plaintiffs, San Francisco Residence Club, Inc., Donahue, O'Shea, LLC, and Thomas P. O'Shea, individually and as trustee of the Trust of Thomas P. and Anne O'Shea, for cause of action against the defendants, Henry A. Amado, Sr., Abacus Financial Group, LLC, White Sands Estates, LLC, Edward S. Broda, Aspire Real Estate, Inc., Aspire Investments, Inc., Gregory Fish, and G.D. Fish & Associates, state as follows:

## PARTIES

1.      The plaintiff, San Francisco Residence Club, Inc. ("SFRC"), is a corporation formed and existing pursuant to the laws of the State of California, with its principal place of business in Corte Madera, California.   Kevin Donahue and Kate Donahue are both officers of SFRC.

2.      Donahue, O'Shea, LLC ("Donahue") is a limited liability company formed and existing pursuant to the laws of the State of California.  Kate Donahue, Kevin Donahue, and Anne O'Shea, all of whom are citizens and residents of the State of California, are the members of Donahue, O'Shea, LLC.

3.      Thomas P. O'Shea is a citizen and resident of the State of California.  At all times relevant hereto, Thomas P. O'Shea was over the age of 65 years.

4.      The Trust of Thomas P. O'Shea and Anne O'Shea is a trust settled under the laws of the State of California, having as its trustees and beneficiaries Thomas P. and Anne O'Shea, both of whom are citizens and residents of the State of California.

5.      Henry S. Amado, Sr. ("Amado") is a citizen and resident of the State of California.  At all times relevant hereto, Amado was an agent of Abacus Financial Group, LLC. Amado's actions were taken within the course and scope of his employment with Abacus, which is vicariously responsible for his conduct.

6.      Abacus Financial Group, LLC ("Abacus") is a limited liability company formed under the laws of the State of California.  Amado is the managing member of Abacus.

7.      Edward S. Broda ("Broda") is a citizen and resident of the State of California.  At all times relevant hereto, Broda was an agent of Aspire Real Estate, Inc. and Aspire

LANAHAN & REILLEY LLP

600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

1   Investments, Inc.  Broda's actions were taken within the course and scope of his employment with

2   Aspire Real Estate, Inc. and Aspire Investments, Inc., which are vicariously responsible for his

3   conduct.

4          8.    Aspire Real Estate, Inc. ("Aspire") is a corporation formed on April 3, 2007,

5   under the laws of the State of California, with its principal place of business at 2121 N. California

6   Boulevard, Suite 290, Walnut Creek, California 94596.

7          9.    Aspire Investments, Inc. is a corporation formed on December 30, 2005,

8   under the laws of the State of California, with its principal place of business at 2121 N. California

9   Boulevard, Suite 290, Walnut Creek, California 94596.  Aspire Investments, Inc. was formerly

10  known as Aspire Financial, Inc., having changed its name on May 18, 2007.

11        10.    Gregory Fish ("Fish") is a citizen and resident of the State of California.  At

12  all times relevant hereto, Fish was an agent of G.D. Fish & Associates.  Fish's actions were taken

13  within the course and scope of his employment with G.D. Fish & Associates, which is vicariously

14  responsible for his conduct.

15        11.    G.D. Fish & Associates is a corporation organized and existing pursuant to

16  the laws of the State of California, with its principal place of business in Danville, California.  G.D.

17  Fish & Associates was formerly known as G.D. Fish & Associates, A Registered Investment

18  Advisory Corporation.

19        12.    White Sands Estates, LLC (sometimes referred to as "Issuer") is a Hawaii

20  limited liability company.  Amado is the manager of White Sands Estates, LLC.  Amado acted

21  within the course and scope of his authority as manager of the Issuer in connection with the

22  securities sold to the plaintiffs.

23  **JURISDICTION**

24        13.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 in that

25  plaintiffs' claims arise under Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l, and

26  Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5

27  promulgated thereunder, 17 C.F.R. § 240.10b-5.  This Court has supplemental jurisdiction over the

28  state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that all defendants either reside or maintain their principal place of residence in this District, and the actions giving rise to the plaintiffs' claims occurred, in part, within this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 77v.

## INTRODUCTION

15.    This case involves the sale of securities, as defined in the Securities Act of 1933, 15 U.S.C. § 77l, in an entity formed to acquire and develop an unimproved 42.28 acre parcel of real estate (the "Property") in Kailua-Kona, Hawaii.

16.    The proposed development, known as "White Sands Estates," is located 1.5 miles south of downtown Kona on the Big Island of Hawaii.

17.    The defendants marketed and sold to the plaintiffs membership interests in White Sands Estates, LLC and in an undivided interest in certain real property pursuant to a Tenants in Common (or "TIC") Agreement.  The defendants' sales activities occurred principally in the Northern District of California, and the sale occurred in this District.  Despite the fact that the interests sold are securities, as defined in the Securities Act of 1933 and were not exempt from registration under Rule 506 of Regulation D (17 C.F.R. 230.506), the defendants failed to register the securities with either the Securities and Exchange Commission or the California Department of Corporations, as required by Cal. Corp. Code § 25110.

18.    The defendants made numerous misrepresentations and omissions in connection with the sale, including but not limited to representations as to the purchase price of the Property, the appraised value of the Property, the financing available for the acquisition and development of the Property, and the projected revenues of the development once completed.

19.    In reliance upon the representations of the defendants, the plaintiffs invested approximately $3.5 million to acquire membership interests in White Sands Estates, LLC and in the TIC Agreement.  Although the Property was acquired by White Sands Estate, LLC (principally through the use of plaintiffs' funds and the proceeds of a $7 million loan obtained from a "hard money," predatory lender, Kennedy Funding, Inc.), the Property is not being, and cannot be,

LANAHAN & REILLEY LLP

600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

1   developed because – contrary to the representations made to plaintiffs – no funds are available to
2   complete the project.

3         20.    White Sands Estates, LLC is unable to service the principal and subordinated
4   debt on the Property.  The Note and Mortgage to Kennedy Funding, Inc. are in default, the property
5   taxes on the Property remain unpaid, and the plaintiffs face the prospect of a total loss of their
6   investment.  Kennedy has also instituted foreclosure proceedings against the Property.  *See*
7   ***Kennedy Funding, Inc. v. White Sands Estates, LLC, et al.***, Case No. 09-00191-JMS-BMK, U.S.
8   District Court for the District of Hawaii.

9         21.    Because the defendants sold the securities involved herein to the plaintiffs in
10  violation of Section 12(a)(2) of the Securities Act of 1933 and in violation of Section 10(b), and
11  Rule 10b-5 thereunder, of the Securities Exchange Act of 1934, the plaintiffs have brought this
12  action to rescind the sale of the securities and to recover damages.  The plaintiffs also seek relief
13  pursuant to 28 U.S.C. § 1967 under various state law statutory and common law remedies.

14        22.    The Operating Agreement of White Sands Estates, LLC contains a forum
15  selection clause that requires any litigation between the parties to be filed in state or federal court in
16  Hawaii.  The TIC Agreement contains an arbitration clause that requires any dispute between the
17  parties to be arbitrated in San Francisco, California.  The plaintiffs invoke neither the forum
18  selection clause nor the inconsistent arbitration provision, but instead allege that venue is proper
19  here, and that all claims between and among the parties should be resolved in this forum.

20  **BACKGROUND**
21  **1. Origins of the Investment**

22        23.    On or about August 8, 2007, defendant Ed Broda, founder and CEO of
23  Aspire Real Estate Inc. and Aspire Investments, Inc. (collectively "Aspire"), advised Kevin
24  Donahue of an investment opportunity in White Sands Estates, LLC.

25        24.    Broda had acted as an investment adviser to the Donahues and the O'Sheas,
26  and had placed investments for them for a number of years.  The relationship began in 2004 when
27  Broda advised Thomas O'Shea and the Trust of Thomas and Anne O'Shea with respect to the
28  purchase of an interest in a commercial office building in Houston, Texas.

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

25.    In 2005, Broda advised the plaintiffs, or other members of their family, with respect to investments in commercial office buildings in Richmond, Virginia, and Emeryville, California. He also provided investment advisory services to the plaintiffs in 2005 with respect to the purchase of interests in two apartment communities in Greensboro, North Carolina.

26.    In 2006, Broda advised the plaintiffs with respect to the purchase of an interest in an apartment building in Indianapolis, Indiana, and with respect to the purchase of an interest in a commercial building in Chicago, Illinois.

27.    Broda was, thus, aware of the investment objectives of the plaintiffs, and knew in March 2007 that plaintiffs needed to identify opportunities to effect a "like-kind" exchange in compliance with Section 1031 of the Internal Revenue Code.

28.    With this knowledge and insight into the background and investment objectives of the plaintiffs, Broda presented to Kevin Donahue, an officer of SFRC, an opportunity to invest in White Sands Estates, LLC, and its real estate development in Kona, Hawaii. Broda advised Kevin Donahue that the opportunity was available through defendant Amado and his company, Abacus Financial Group, LLC ("Abacus"), and recommended that he and his family invest in the project.

29.    Broda presented White Sands Estates as a project that would be profitable during the development stage and would provide the plaintiffs with a "coupon" return on investment of 12% per annum for 12 to 24 months, at the end of which the plaintiffs would recover their initial investment. In addition, he stated that plaintiffs would participate in a percentage of profits generated by the sale of completed residential units.

30.    At no time did Broda advise the plaintiffs that an investment in White Sands Estates was a high risk investment. To the contrary, Broda sold the investment on the basis that it was a low-risk, income-producing investment. The plaintiffs specifically advised Broda that an income-producing investment was a must, and that they were not interested in an investment that did not generate income.

31.    At all times relevant hereto, Broda acted as an "investment adviser," as defined in Cal. Corp. Code § 25009(a), to the plaintiffs, yet a search of the on-line records of the

LANAHAN &amp; REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

1   California Department of Corporations does not reveal that Broda was ever certified as an

2   investment adviser under Cal. Corp. Code § 25230. Broda did, apparently, hold a Conditional

3   Salesperson License from the California Department of Real Estate until such license was

4   suspended on August 28, 2005.

5           32.      Abacus is a registered investment adviser, CRD #136605.

6           33.      On or about August 18, 2007, Broda arranged a conference call between the

7   plaintiffs and Amado. Amado met personally with Kevin Donahue and Kate Donahue to solicit

8   SFRC's investment in the White Sands project on August 20, 2007.

9           34.      During the meeting, Amado provided to Kate and Kevin Donahue an

10  Executive Summary (the "Prospectus") concerning the project, along with a proposed Operating

11  Agreement for White Sands Estates, LLC, and certain financial projections concerning the project.

12          35.      The Prospectus stated that the Property was under contract at a price of

13  $9,950,000, but had a value, according to the most recent appraisal, of $19,400,000. The financial

14  projections that Amado provided showed that the plaintiffs would receive a return on their

15  investment of between 32% and 37% per year. Amado's financial summary further indicated that,

16  after a preferred return of capital is made within one to two years of the initial investment, "Investor

17  Capital at Risk is reduced to zero."

18          36.      Amado represented, inter alia, that he had retained Gregory Fish and G.D.

19  Fish & Associates to develop the project. Fish touted his prior development experience to the

20  plaintiffs and referred them to other projects that he had developed and for which he had obtained

21  all necessary funds to complete the development.

22          37.      Fish lent credibility to, and reaffirmed the reliability of, Amado's statements

23  to the plaintiffs. If the defendants were successful in soliciting plaintiffs to invest in the project,

24  Fish stood to receive a refund of a deposit on the Property of $100,000, and to make hundreds of

25  thousands of dollars in project management fees.

26          38.      As a result of and in reliance upon the representations made by Amado, Fish

27  and Broda, SFRC agreed to purchase (and did purchase) for $2 million a ten percent (10%)

28

1  undivided interest in the Property pursuant to a TIC Agreement and a sixteen percent (16%)

2  membership interest in White Sands Estates, LLC, for $2 million.

### 2. Misrepresentations and Omissions Concerning Value of the Property
### and the SMA Permit

5      39.    The success of the proposed development of the Property depended, in part,

6  upon obtaining a "Special Management Area" (or "SMA") Use Permit from the County of Hawaii

7  Planning Department.

8      40.    On September 20, 2007, the Planning Commission voted 5-1 in favor of

9  granting the Property an SMA.  On September 22, 2007, Fish advised the plaintiffs that this vote

10  "added about $4 million to the value" of the Property.  Amado told the plaintiffs that, as a result of

11  the vote, the "Property has just doubled in value."

12      41.    Neither Amado, Broda or Fish disclosed to the plaintiffs, however, that the

13  Lender's valuation advisor, Volpe Real Estate Advisors, Inc., had issued a report that valued the

14  Property after SMA approval at just $11,200,000.  Defendant Amado received the Volpe valuation

15  on or about October 2, 2007, but intentionally and fraudulently concealed it from plaintiffs.  Both

16  Amado and Fish were informed of Volpe's valuation conclusions on or about September 12, 2007.

17      42.    In addition, on January 30, 2007, the Newport Beach, California office of CB

18  Richard Ellis issued an appraisal that demonstrated the value of the Property to be between $11

19  million (with a marketing period of six months) and $15.69 million (with a marketing period of

20  twelve months).  These defendants, however, never disclosed the existence of the CB Richard Ellis

21  appraisal to plaintiffs and, to the contrary, falsely represented that – as of August 17, 2007 – the

22  most recent appraisal valued the Property at $19.4 million.

23      43.    Thus, contrary to defendants' representations that the issuance of the SMA

24  Use Permit had "doubled" the value of the Property, the Property had actually been valued several

25  times at substantially less than the $19.4 million appraisal that had been disclosed to plaintiffs.

26      44.    Upon information and belief, Amado and Fish also concealed from other

27  investors, including Jeff Culver, Trustee of the Jeff Culver Revocable Trust dated August 23, 2006,

28

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

-8-

1  the existence of the $11,200,000 Volpe valuation and the January 30, 2007, CB Richard Ellis

2  appraisal.

### 3. Misrepresentations and Omissions Concerning Financing

4      45.     The Prospectus that Amado originally presented to plaintiffs indicated that,

5  in addition to the funds raised through the sale of membership interests to investors, White Sands

6  Estates, LLC was to obtain a loan in the amount of $6 million to finance the acquisition of the

7  Property.

8      46.     Amado and Fish were not able to obtain a loan from a conventional lender,

9  but instead contracted with Kennedy Funding, Inc. ("Kennedy"), a notorious and ill-reputed "hard

10  money" lender, for a $7 million loan on the most onerous terms imaginable.

11      47.     A "hard money" lender is one that lends money as a last resort to borrowers

12  who cannot get loans from mainstream investors.  Kennedy's primary business is to make loans

13  secured by mortgages on real estate that traditional financial institutions will not consider because

14  of the level of risk involved.

15      48.     The very fact that Kennedy was involved as the lender on the project should

16  have caused Broda to advise the plaintiffs not to invest funds in the project.  Broda knew that the

17  plaintiffs wished to invest in a low risk, income-producing asset, yet recommended an investment

18  that had a high risk, predatory lender such as Kennedy involved.

19      49.     The terms of the Kennedy loan are truly unconscionable and include, inter

20  alia:

21          (a)     a "commitment fee" of $231,000;

22          (b)     a loan fee of $350,000;

23          (c)     a mortgage brokerage fee of $140,000;

24          (d)     an interest rate of 12% per annum in the first year of

25                  the loan, and 18% per annum thereafter; and

26          (e)     $840,000 in pre-paid interest.

27      50.     Once all such fees were paid, only $5.3 million of the $7 million loan

28  remained to acquire the Property.

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

51. As a result, Amado and Fish obtained a second loan on the property from a second "hard money" lender, FC Kona, LLC, a Nevada limited liability company, in order to complete the purchase. The terms of this loan were even worse. The principal amount of this second loan was $756,000. In order to obtain this loan, Amado, on behalf of White Sands Estate, LLC, agreed to pay $126,000 in points on the loan, which only had a term of 90 days. These points are in addition to the interest paid on the loan for the three months that it was outstanding. In total, Amado paid $259,000 to borrow $756,000 for 90 days.

52. Amado, Broda and Fish failed to disclose to the plaintiffs all of the material terms of these draconian loans. Instead, the defendants minimized the unconscionable terms of these loans. Amado affirmatively represented to the plaintiffs that he already had lined up "take out" lenders to provide financing to retire the Kennedy loan shortly after closing.

53. Even after agreeing to the terms of these two "hard money" loans, the defendants still did not have sufficient funds to close the sale of the Property. Without any disclosure to the plaintiffs of any kind, and with actual intent to conceal and defraud, Amado borrowed another $500,000 from the seller of the Property to complete the acquisition. The plaintiffs did not discover the existence of this loan until it appeared on White Sands Estate, LLC's balance sheet for 2008.

54. The proceeds of SFRC's investment, the Kennedy loan, the FC Kona loan, and the off record $500,000 in seller financing still did not yield sufficient cash to close the acquisition. As a result, Amado requested that the plaintiffs invest additional funds. In reliance upon Amado's representations that the SMA designated for the property had "doubled" its value, and upon Amado's representations that he had "take out" lenders to retire the onerous "hard money" lenders with whom he had contracted, plaintiff Donahue, O'Shea, LLC purchased a four percent (4%) Class A membership interest and a twelve percent (12%) Class B membership interest in White Sands Estates, LLC for $1 million.

55. On November 15, 2007, the defendants having cobbled together sufficient funds to purchase the Property, White Sands Estates, LLC closed the purchase of the Property.

1

### 4. Misrepresentations and Omissions as to the Purchase Price

2       56.    The purchase price of the Property as reflected on the HUD Settlement

3   Statement, and as represented to the plaintiffs, was $9,975,000.

4       57.    This, however, was not the true purchase price.  Financial statements that the

5   plaintiffs have recently obtained from White Sands Estates, LLC reflect that the actual purchase

6   price of the Property was $10,495,000. Due to the excessive loan fees paid, prepaid interest and

7   reimbursement of expenses and fees to Defendants the actual capitalized cost of the property far

8   exceeded the Volpe value estimate resulting in a true purchase price far in excess of that stated by

9   Defendants.

10      58.    Amado intentionally misrepresented the amount of the purchase price of the

11  Property to plaintiffs to induce their investment in the project.  He did this while concealing from

12  them the existence of a contemporaneous valuation of the Property that valued the Property at only

13  $11,200,000, or $8.2 million less than the appraisal that Amado disclosed as the "most recent"

14  appraisal.

15  ### 5. Post-Closing Matters and the Vestawood Investment

16      59.    Amado, as the managing member of White Sands Estates, LLC, has managed

17  the project from the acquisition of the Property on November 15, 2007, to the present.  The project

18  has floundered, is near bankruptcy, and is involved in foreclosure proceedings.

19      60.    The "take out" lenders whom Amado represented were available to retire the

20  Kennedy loan and to provide additional financing for the development and construction of the

21  Project never materialized.

22      61.    White Sands Estates, LLC has not been able to service the debt and is now in

23  default.  The property taxes due on the Property remain unpaid.  White Sands Estates, LLC has

24  accumulated more than $11 million in debt, including the Kennedy loan, from August 17, 2007, to

25  the present, including more than $1 million owed to the architectural firm that White Sands Estates,

26  LLC has used to prepare plans for the project.

27      62.    White Sands Estates, LLC has likewise been unable to pay its obligations to

28  plaintiffs. Under the terms of the Operating Agreement and the TIC Agreement, Amado and White

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

-11-

Sands Estates were obligated to pay a preferred return to plaintiffs. Based upon Amado's representations that any additional investment would be used to reduce *pro tanto* the investment of Donahue O'Shea, LLC, the Trust of Thomas P. and Anne O'Shea (the "Trust") purchased for $382,537.96 a three percent 3% membership interest in White Sands Estates, LLC and a purported undivided interest in the Property pursuant to an amended TIC Agreement.

63. Such funds were the proceeds of the Trust's sale of an investment in real property known as "Vestawood," and were to be invested as a "like kind" exchange in accordance with provisions of § 1031 of the Internal Revenue Code. Amado knew that such funds were to be invested in accordance with Section 1031, and agreed to structure such investment so as to comply with Section 1031 of the Internal Revenue Code. Upon information and belief, however, Amado never placed the Trust on the title to the Property or vested its ownership interest to comply with Section 1031 regulations. He also, intentionally or negligently, failed to structure the Trust's investment of $382,537.96 to comply with Section 1031.

64. Further, Amado failed to use the Trust's Section 1031 funds to reduce the investment of Donahue O'Shea, LLC, as he had promised. Instead, he has paid management fees to himself and "contracting fees" to Fish. Amado currently owns an interest of approximately 50% in White Sands Estates despite the fact that he paid little, if anything, for that interest.

65. Amado has continued to borrow funds to keep the project alive. He has borrowed certain of these funds from clients for whom he and Abacus provide investment advice. He persuaded one of his clients, an 80-year old widow, to lend $435,000 to White Sands Estates at an interest rate of 24% per year. He has now defaulted in the payment of interest on this loan, and the widow (who mortgaged her property to raise the $435,000) faces the loss of the principal amount of her loan, just as plaintiffs face the loss of 100% of their $3.5 million investment.

66. Amado has also borrowed funds from other Abacus clients to pay the ongoing expenses of the project.

67. White Sands Estate, LLC is now insolvent, and the project is on the brink of collapse. The project never had a realistic chance of success. Amado's inability to obtain financing for the project on reasonable terms should have caused him not to purchase the Property. Instead,

-12-

1   he recklessly went forward, placing all of plaintiffs' funds at risk.   He did this while

2   misrepresenting to plaintiffs the purchase price of the Property, concealing the existence of

3   valuation opinions that contradicted his representations as to the value of the Property, failing to

4   disclose the existence of $500,000 in seller financing, failing to disclose the draconian terms of his

5   "hard money" lenders, and falsely representing that he had "take out" lenders lined up to pay off

6   Kennedy and to fund the construction of the project.

7          68.    He also paid commissions to Broda and others in connection with the sale of

8   the securities to plaintiffs and failed to qualify plaintiffs as accredited investors.

9   ## LEGAL CLAIMS

10   ## FIRST CAUSE OF ACTION

11   ### (Violation of Section 10(b) of the Exchange Act,
     ### 15 U.S.C. § 78j, Rule 10b-5 Thereunder)

     ### (Defendants Amado, Abacus and Issuer)

13          69.    The allegations set forth in paragraphs 1 through 68 are incorporated herein

14   as fully as if set out verbatim.

15          70.    Amado, Abacus and the Issuer ("Amado Defendants") violated Section 10(b)

16   of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder in that they, by engaging in the

17   conduct set forth supra, directly or indirectly, by use of means or instrumentalities of interstate

18   commerce, or of the mail, with scienter:

19
20           (a)    employed devices, schemes and artifices to defraud;

21           (b)    made untrue statements of material fact or omitted to state material

22   facts necessary in order to make the statements made, in light of the

23   circumstances under which they were made, not misleading; and

24           (c)    engaged in acts, practices, and a course of business that operated as a

25   fraud or deceit upon the plaintiffs in connection with their investment

26   in the Securities.

27          71.    The plaintiffs reasonably relied upon the fraudulent conduct,

28   misrepresentations, and omissions of the Amado Defendants and were damaged.   The fraudulent

LANAHAN & REILLEY LLP

600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

1  conduct, misrepresentations, and omissions of the defendants proximately caused the damages that

2  the plaintiffs suffered.

3  ///

4  ///

5         72.    The Amado Defendants are liable for the plaintiffs' damages caused by the

6  defendants' violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule

7  10b-5 thereunder, in an amount to be proven at trial.

8

9  **SECOND CAUSE OF ACTION**
**(Violation of Section 20(a) of the Securities Exchange Act,**

10  **15 U.S.C. § 78t)**
**(Amado)**

11         73.    The allegations set forth in paragraphs 1 through 72 are incorporated herein

12  as fully as if set out verbatim.

13         74.    At all times relevant hereto, Amado was a controlling person of the Issuer

14  within the meaning of the Securities Exchange Act.

15         75.    Amado possesses, directly or indirectly, the power to direct or cause the

16  direction of the management and policies of the Issuer through the ownership of voting securities,

17  by contract or otherwise.

18         76.    As a direct and proximate result of the wrongful conduct of Amado, the

19  plaintiffs suffered damages in connection with their purchase of the securities.

20         77.    By reason of such wrongful conduct, Amado is liable pursuant to Section

21  20(a) of the Securities Act, 15 U.S.C. § 78t, in an amount to be proven at trial.

22

23  **THIRD CAUSE OF ACTION**
**(Violation of Section 12(a)(2) of the Securities Act of 1933,**

24  **15 U.S.C. § 77l(a)(2))**
**(All Defendants)**

25         78.    The allegations set forth in paragraphs 1 through 76 are incorporated herein

26  as fully as if set out verbatim.

27         79.    In connection with the offer and sale of securities, by the use of means or

28  instruments of transportation or communication in interstate commerce or of the mails, the

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

1  defendants made oral and written communications that included untrue statements of material facts

2  and omitted to state material facts necessary to make the statements, in light of the circumstances

3  under which they were made, not misleading.

4      80.    Each of the defendants successfully solicited the sale of the securities at

5  issue, and each was motivated by a desire to serve his own financial interests.  Broda and Aspire

6  were motivated to obtain a commission of at least $200,000.  Fish and G.D. Fish & Associates were

7  motivated to receive a refund of the latter's $100,000 deposit on the Property, and to receive

8  hundreds of thousands of dollars in project management fees.  The Amado Defendants were

9  motivated to serve the interests of the Issuer and to obtain fees and other remuneration through the

10  sale of securities.

11      81.    Further, because no exemption from registration existed, the securities sold

12  were required to be registered in accordance with the Securities Act of 1933, but in violation of the

13  Act, the defendants failed to register the securities.

14      82.    Without knowledge of the material omissions and misrepresentations or the

15  violation of the Act, the plaintiffs purchased the securities at issue.  The plaintiffs hereby tender the

16  securities to the defendants.  The defendants are liable to return to the plaintiffs the consideration

17  paid for the securities issued in violation of Section 12(a)(2) of the Securities Act, 15 U.S.C.

18  § 77l(a)(2).

### FOURTH CAUSE OF ACTION
### (Violation of Cal. Corp. Code § 25501)
### (Amado, Abacus and Issuer)

19

20      83.    The allegations set forth in paragraphs 1 through 82 are incorporated herein

21  as fully as if set out verbatim.

22      84.    Cal. Corp. Code § 25401 declares that it is unlawful for any person to offer

23  or sell a security in this state "by means of any written or oral communication which includes an

24  untrue statement of material fact or omits to state a material fact necessary in order to make the

25  statements made. . ." not misleading.

26

27

28

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

85.    Cal. Corp. Code § 25501 provides, in pertinent part, that any person who violates Section 25401 shall be liable to the person who purchases a security from him for rescission.

86.    Amado, Abacus and the Issuer sold securities to the plaintiffs in this state by means of untrue statements of material fact and by omitting to state other material facts.

87.    The plaintiffs did not know the facts concerning the untrue statements or omissions.

88.    The defendants failed to exercise reasonable care and did know of the untrue statements and omissions.

89.    The plaintiffs hereby tender to the defendants the securities purchased.  The defendants are liable to return to the plaintiffs the consideration paid for the securities.

### FIFTH CAUSE OF ACTION
#### (Violation of Cal. Corp. Code § 25504)
#### (Amado, Broda and Fish)

90.    The allegations set forth in paragraphs 1 through 89 are incorporated herein as fully as if set out verbatim.

91.    Amado directly and indirectly controlled the Issuer and used such control to cause Issuer to violate Section 25501.

92.    Amado, Broda and Fish materially aided in the violation of Section 25501.

93.    These defendants had knowledge of, and reasonable grounds to believe in the existence of, the facts giving rise to the violation of Section 25501.

94.    As a direct and proximate result of Amado's control of the Issuer, and of the material aid that Amado and the other defendants rendered to the Issuer in the violation of Section 25501, the plaintiffs have been damaged.

### SIXTH CAUSE OF ACTION
#### (Violation of Cal. Corp. Code § 25504.1)
#### (Amado)

95.    The allegations set forth in paragraphs 1 through 94 are incorporated herein as fully as if set out verbatim.

LANAHAN & REILLEY LLP

600 B/CENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 524-4610 FACSIMILE

LANAHAN & REILLEY LLP

600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

1    96.    Cal. Corp. Code § 25504.1 provides that any person who materially assists in

2    a violation of Section 25401 with intent to deceive and defraud is jointly and severally liable with

3    any other person liable for the violation.

4    97.    Amado materially assisted the Issuer in its violation of Section 25401.

5    Amado did so with the intent to deceive and defraud the plaintiffs.  Through the misrepresentations

6    and omissions detailed above, Amado intended to induce (and did induce) plaintiffs to purchase the

7    securities at issue.

8    98.    The plaintiffs reasonably and justifiably relied upon the misrepresentations

9    and omissions of Amado and were proximately damaged thereby.

10   **SEVENTH CAUSE OF ACTION**
     **(Violation of Cal. Civ. Code § 3372)**
11   **(Broda and Aspire)**

12   99.    The allegations set forth in paragraphs 1 through 98 are incorporated herein

13   as fully as if set out verbatim.

14   100.   Broda and Aspire, for compensation, advised plaintiffs as to the advisability

15   of purchasing the securities at issue for investment.  Broda represented himself to be an expert with

16   respect to investment decisions in such property.

17   101.   The advice that Broda and Aspire provided to plaintiffs was rendered without

18   the due care and skill reasonably to be expected of a person who is such an expert.

19   102.   The plaintiffs reasonably and justifiably relied upon the investment advice

20   that Broda provided, and purchased the securities at issue in reliance upon such advice.

21   103.   As a direct and proximate result of plaintiffs' reliance upon the advice of

22   Broda, the plaintiffs have been damaged.

23   **EIGHTH CAUSE OF ACTION**
     **(Unfair and Deceptive Practices in Violation of Cal. Bus. & Prof. Code)**
24   **(All Defendants)**

25   104.   The allegations set forth in paragraphs 1 through 103 are incorporated herein

26   as fully as if set out verbatim.

27   105.   As set forth in detail supra, the defendants engaged in numerous unfair and

28   deceptive trade practices that caused injury to the Plaintiffs.

-17-

1    106.   The unfair and deceptive conduct, fraudulent conduct, misrepresentations,

2 omissions, and other tortious conduct violated Cal. Bus. & Prof. Code §§ 17200 and 17500.

3    107.   The plaintiffs relied upon the conduct, misrepresentations, and omissions of

4 Amado to their detriment.

5    108.   As a direct and proximate result of Amado's violation of Sections 17200 and

6 17500, the plaintiffs have been damaged.  The Plaintiffs are entitled to recover from Amado actual

7 damages, treble damages, attorneys' fees and expenses, and any other civil remedies available

8 under the Cal. Bus. & Prof. Code § 17000, et seq.

9

## NINTH CAUSE OF ACTION
10
### (Damages for Violations of Cal. Welf. & Inst. Code § 15657.5)
### (Amado, Fish, Broda)
11

12    109.   The allegations set forth in paragraphs 1 through 108 are incorporated herein

as fully as if set out verbatim.
13
     110.   Thomas O'Shea is an elder within the meaning of § 15657.5.
14
     111.   The defendants took, secreted, appropriated or retained $382,000 from
15
Thomas O'Shea's Trust for a wrongful use and/or with intent to defraud.
16
     112.   To the extent that any of the defendants did not themselves take, secret,
17
appropriate, or retain Thomas O'Shea's $382,000, they assisted in said taking, secreting,
18
appropriating and/or retaining of his $382,000 for a wrongful use and/or with the intent to defraud.
19
     113.   The defendants acted with full knowledge that Thomas O'Shea was an Elder
20
and citizen of California and used the internet and telephone to target their actions at Mr. O'Shea in
21
California.
22
     114.   As a result of the defendants' actions, Thomas O'Shea suffered an injury in
23
California through the loss of his $382,000.
24
     115.   The defendants were guilty of recklessness, oppression, fraud, and/or malice
25
within the meaning of Cal. Welf. & Inst. Code § 15657.5 in their financial abuse of Thomas O'Shea
26
and he is thereby entitled to punitive damages.
27

28

-18-

LANAHAN & REILLEY LLP

600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

116.   Mr. O'Shea is entitled to his reasonable costs and attorney's fees pursuant to Cal. Welf. & Inst. Code § 15657.5.

///

///

///

## TENTH CAUSE OF ACTION
### (Fraud)
### (Amado, Abacus and Issuer)

117.   The allegations set forth in paragraphs 1 through 116 are incorporated herein as fully as if set out verbatim.

118.   The Amado Defendants made material misrepresentations and omissions to the Plaintiffs concerning the nature of the transaction.

119.   The Amado Defendants made material misrepresentations to Plaintiffs concerning the value of the Property, the history and result of their efforts to obtain financing for the transaction, and omitted to state other material facts that defendants were under a duty to disclose.

120.   Such misrepresentations were made intentionally and with knowledge of their falsity.

121.   Plaintiffs reasonably relied upon such misrepresentations and were proximately damaged as a result of such reliance.

## ELEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### (Broda and Aspire)

122.   The allegations set forth in paragraphs 1 through 121 are incorporated herein as fully as if set out verbatim.

123.   Broda acted as an investment adviser and as such owed a fiduciary duty to plaintiffs.  The plaintiffs had a confidential relationship of trust by which they looked to Broda for investment advice and guidance in connection with the purchase of the securities, as they had done numerous times in the past.

LANAHAN & REILLEY LLP

600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

124.   Broda breached this duty through the misrepresentations, omissions and other conduct detailed above. In particular, Broda represented to the plaintiffs that they could rely upon his expertise in evaluating investments such as the securities purchased here. Broda likewise failed to disclose material facts concerning the purchase, financing, and development of the Property, yet solicited plaintiffs' purchase of the securities at issue anyway.

125.   As a direct and proximate result of Broda's breach of fiduciary duty, the plaintiffs have been damaged.

### TWELFTH CAUSE OF ACTION
**(Negligent Misrepresentation)**
**(Amado, Fish, Broda)**

126.   The allegations set forth in paragraphs 1 through 125 are incorporated herein as fully as if set out verbatim.

127.   As set forth supra, the defendants misrepresented numerous facts to the plaintiffs without reasonable grounds for believing such facts to be true, and with the intent to induce the plaintiffs' reliance on the facts misrepresented.

128.   The plaintiffs justifiably relied on such misrepresentations and were damaged as a direct and proximate result of such reliance.

### THIRTEENTH CAUSE OF ACTION
**(Professional Negligence)**
**(Amado and Abacus)**

129.   The allegations set forth in paragraphs 1 through 128 are incorporated herein as fully as if set out verbatim.

130.   Abacus is a professional tax advisor and financial planner that, according to its website, www.abacusfinancialgroup.com, provides "the highest quality tax and financial advice personally tailored" to its clients' circumstances and needs.

131.   Amado is an Enrolled Agent and a Certified Investment Management Consultant.

132.   Amado and Abacus agreed to invest $382,537.96 of the proceeds of the Trust's sale of the Vestawood property in compliance with Section 1031 of the Internal Revenue Code and to structure the investment to comply with the IRS Code and Regulations.

133.   Amado and Abacus failed to invest such funds in a manner consistent with IRC Code Section 1031 and the applicable Regulations, and have caused the Trust to lose the tax deferred treatment of the proceeds of the sale of the Vestawood investment.  Specifically, Amado and Abacus structured the investment in the form of a loan, failed to timely place the Trust on title with an undivided interest in the real property and failed to assign an adequate mortgage basis to the Trust. The Trust relied on the expertise and skill of Amado to properly effect the 1031 transaction.

134.   Amado and Abacus failed to exercise reasonable care in structuring the Trust's investment to comply with Section 1031.  In the alternative, Amado and Abacus acted intentionally.

135.   As a direct and proximate result of Amado and Abacus' failure to exercise ordinary and reasonable care, the Trust has been damaged.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray as follows:

(1)    That this Court award plaintiffs a judgment of compensatory and punitive damages against the defendants in an amount to be shown to the Court;

(2)    That this Court rescind the sale of securities and award plaintiffs a judgment against the defendants in the amount of the consideration paid therefor, together with interest and damages;

(3)    That this Court award plaintiffs a judgment of treble damages against the defendants;

(4)    That this Court award plaintiffs a judgment against defendants for pre-judgment interest and attorneys' fees; and

(5)    That this Court award such other and further relief as it deems just and equitable.

LANAHAN & REILLEY LLP
600 BICENTENNIAL WAY, SUITE 300
SANTA ROSA, CALIFORNIA 95403
(707) 524-4200 TELEPHONE
(707) 523-4610 FACSIMILE

1    Dated: May 8, 2009                  Respectfully submitted,

2

3                                        Michael J. M. Brook (Bar No. 139595)

4                                        LANAHAN & REILLEY, LLP
                                         600 Bicentennial Way, Suite 300
5                                        Santa Rosa, California  95403
                                         Telephone:   (707) 524-4218
6                                        Facsimile:    (707) 523-4610
                                         mbrook@lanahan.com
7

8                                        Attorneys for Plaintiffs SAN FRANCISCO
                                         RESIDENCE CLUB, INC., DONAHUE,
9                                        O'SHEA, LLC, THOMAS P. O'SHEA, individually and as
                                         TRUSTEE FOR THE TRUST OF THOMAS P. AND ANNE
10                                       O'SHEA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-