*E-Filed 06/04/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SAN FRANCISCO RESIDENCE CLUB, INC., et al.,

    Plaintiffs,

v.

HENRY A. AMADO, et al.,

    Defendants.

No. C 09-2054 RS

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This case revolves around the sale of membership units in White Sands Estates, a Hawaii limited liability company formed to acquire and develop a 42.28 acre parcel of property in Kailua-Kona, Hawaii. Plaintiffs, who purchased membership interests in that property, move for summary judgment of their claim to rescind on the ground that the sales violated section 5 of the Securities Act of 1933 (the "Act"). Specifically, plaintiffs contend defendants failed to register the membership interests with the Securities and Exchange Commission (the "SEC" or the "Commission"). Defendants do not dispute that the interests were not registered. At issue here is whether the membership interests were "securities" as contemplated by the Act. Because this

question cannot be answered without first resolving disputed issues of fact, the matter is inappropriate for summary judgment and plaintiffs' motion must be denied.

## I.  RELEVANT FACTS

The plaintiff entities each emanate from members of an extended family.  At least as defendants characterize their activities, the individual family members have over the past several decades engaged in a series of sophisticated real estate investments.  SFRC is a California corporation operated by Kevin and Kate Donahue.  Donahue, O'Shea, LLC, is a California limited liability corporation.  Kevin Donahue, Kate Donahue and Anne (Donahue) O'Shea comprise its members.  The third plaintiff is the O'Shea Trust, managed by Tom O'Shea and his wife, Anne Donahue O'Shea.  Tom O'Shea is the sole individual plaintiff.

According to the First Amended Complaint ("FAC"), defendant Ed Broda advised Kevin Donahue of an investment opportunity in White Sands Estates in 2007.  The White Sands company was apparently formed to acquire and develop an unimproved 42.28 acre parcel of real estate in Kailua-Kona, Hawaii.  Broda, as founder and CEO of companies called Aspire Real Estate and Aspire Investments, had acted as an investment adviser to the Donahues and O'Sheas for a number of years and had placed numerous investments on their behalf.  The plaintiffs explain that Broda advised the plaintiffs with respect to investments in commercial office buildings in Virginia, California and Illinois, and in apartment communities in Indiana and North Carolina.  In 2007, the plaintiffs aver that they were interested in the White Sands Estates and its real estate development project in Kona at least in part as an opportunity to effect a "like-kind" exchange of existing assets in compliance with Section 1031 of the Internal Revenue Code.

Broda referred the plaintiffs to defendant Henry Amado.  Amado is the agent of Abacus Financial Group and also one of the members of White Sands Estates.  Broda arranged a conference call between Amado and Kate and Kevin Donahue on August 18, 2007.  The Donahues explain that Amado then supplied them with an Executive Summary and a proposed Operating Agreement for White Sands Estates.  Amado also represented that he had retained Gregory Fish of G.D. Fish & Associates to develop the project.  According to the plaintiffs, Amado and Fish conceived of the

Kona Development; indeed, plaintiffs suggest it was in part Fish's reputation that drove their decision to invest. The Donahues, on behalf of SFRC, then agreed to purchase for $2 million a ten percent undivided interest in the estate pursuant to a Tenants In Common ("TIC") Agreement and a sixteen percent membership interest in White Sands Estates.

White Sands Estates was established to purchase the acreage with the plaintiffs' investment and through funds obtained from a series of loans from other entities. The primary loan was obtained from an entity called Kennedy Financing, Inc. for a principal amount of $7,000,000. Kevin Donahue acted on behalf of SFRC as a co-borrower under this loan. The company secured a second loan from another lender called FC Kona, LLC, for $756,000, and a third loan from the seller of the Kona property in the amount of $500,000. When these funds were still insufficient to cover the asking price, plaintiffs increased their investment. The Donahue, O'Shea company purchased a four percent Class A membership interest and an eight percent Class B membership in White Sands Estates for approximately $1 million. White Sands Estates purchased the property on November 15, 2007 for $9,975,000. In June of 2008, the O'Shea trust purchased for $382,537.96 a three percent membership interest as well as an undivided interest pursuant to a TIC Agreement.

Defendants offer evidence that at least some of the plaintiffs applied for Hawaiian building permits, described themselves as "developers" on these permits, and retained at least some control of construction and development. Moreover, Kevin and Kate Donahue's attorney, Jeffrey Weiss, also allegedly played a key role in the drafting of several White Sands documents designed to attract future investors. Defendants contend it was Weiss who insisted that the membership interests did not require registration as securities.

White Sands Estates was not able to service the debt on the Kennedy loan and is currently in default. Property taxes remain outstanding. Also according to the FAC, the entity is currently at least $11 million in debt, has failed to repay Kennedy Financing or any other lender and also owes fees to the retained architectural firm. According to the plaintiffs, White Sands Estates is insolvent and on the brink of collapse.

## II.  LEGAL STANDARD

No. C 09-2054 RS
ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party who seeks summary judgment bears the initial responsibility of identifying an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies this initial burden, it shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  "Only disputes over facts that might affect the outcome of the suit under governing law" are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue exists if the non-moving party presents evidence from which a reasonable fact-finder, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Id.* at 248-49.

### III.  DISCUSSION

#### A.  Claim for Relief Under Section 12(a)(1)

Section 12 of the 1933 Act provides that "[a]ny person who . . . (1) offers or sells a security in violation of [section 5 of the 1933 Act] . . . shall be liable . . . to the person purchasing such security from him." 15 U.S.C. § 77l(a) ("section 12(a)(1)").  Section 5, in turn, forbids the offer or sale of unregistered securities in interstate commerce.  15 U.S.C. § 77e(a) ("section 5").

Defendants argue first that this Court cannot as a matter of law grant the relief plaintiffs request because plaintiffs failed to identify section 12(a)(1) of the Securities Act specifically in the FAC.  While plaintiffs do not make reference to the relevant statutory subsection in the FAC, they do contend that defendants sold to them un-registered securities and seek rescission as the appropriate remedy.  *See, e.g.*, FAC. ¶ 18 ("Despite the fact that the interests sold are securities, as defined in the Securities Act of 1933 and were not exempt from registration under Rule 506 of Regulation D (17 C.F.R. 230.506), the defendants failed to register the securities with . . . the Securities and Exchange Commission . . . .").  The notice pleading requirements contemplated by the Federal Rules of Civil Procedure do indeed insist that a plaintiff notify a defendant of all charges

levied against him or her. Where a complaint functionally provides this notice, Rule 8 does not demand the technical pleading upon which defendants insist. *Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) ("We long ago rejected the argument that a specific statute must be named, describing it as an attempt to evoke wholly out-moded technical pleading rules.") (citation and internal quotation marks omitted). Where plaintiffs have adequately alleged the behavior section 12(a)(1) condemns, the fact that they did not expressly name the actual provision is not determinative.

### B. The 12(a)(1) Claim

Turning to the substantive merits of the Trust's section 12(a)(1) claim, defendants argue that material facts are in dispute as to whether the membership and TIC interests were "securities" as contemplated by the Act.[1] The plaintiffs insists the membership and TIC interests were "investment contracts." Defendants argue they were not. "Although characterization of a transaction raises questions of both law and fact, the ultimate issue of whether or not a particular set of facts, as resolved by the factfinder, constitutes an investment contract is a question of law." *United States v. Carman*, 577 F.2d 556, 562 (9th Cir. 1978). "When a mixed question of fact and law involves undisputed underlying facts, summary judgment may be appropriate." *Warfield v. Alaniz*, 569 F.3d 1015, 1019 (9th Cir. 2009) (*citing Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1523 (9th Cir. 1994)).

Section 2 of the Securities Act, 15 U.S.C. § 77b(1), defines the term "security" to include any "investment contract." Although not defined in the Act, the Supreme Court has read the term "investment contract" expansively. *See SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 351 (1943) (stating that the term has been interpreted to reach "[n]ovel, uncommon, or irregular devices, whatever they appear to be"). "It embodies a flexible rather than a static principle, one that is

---

[1] Section 2(1) of the Securities Act of 1933 provides: "The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas or mineral rights . . . or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

NO. C 09-2054 RS
ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *SEC v. Howey Co.*, 328 U.S. 293, 299 (1946).  In *SEC v. Howey Company*, the Supreme Court instructed that "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 298-99.  There, the Court found an investment contract existed where promoters sold acreage with fruit trees on it as well as "service contracts" to cultivate and market the crops, with an allocation of profits directed to the purchaser. *Id.* at 299.

The Ninth Circuit has distilled *Howey*'s definition into a three-part test requiring: (1) an investment of money; (2) in a common enterprise; (3) with an expectation of profits produced by the efforts of others. *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (*quoting SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003)).  As the Court explained in *Alaniz*, the third prong of this test involves two distinct concepts: whether a transaction involves any expectation of profit and whether such expected profits are the product of the efforts of a person other than the investor. *Id.* Moreover, while *Howey*'s third prong discussed an expectation of profits "solely from the efforts of the promoter or a third party," 328 U.S. at 299, the Ninth Circuit has "dropped the term 'solely' and instead require[s] that the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989) (*quoting SEC v. Glenn W. Turner Enters.*, 474 F.2d 476, 482 (9th Cir. 1983)).

The parties' disagreement centers on competing conceptions of the plaintiffs' involvement. Defendants do not disagree that a TIC interest can in appropriate contexts function as an investment contract. *See, e.g.*, *SEC v. TLC Investments & Trade Co.*, 179 F. Supp. 2d 1149, 1158 (C.D. Cal. 2001).  Nor do they claim a membership interest in a company tasked with property development is inherently inconsistent with an investment contract.  They do suggest, however, that plaintiffs' involvement and actual control indicates that, in this particular case, the memberships were not a security at all but rather a real property interest. *See, e.g.*, *Deutsch Energy Co. v. Mazur*, 813 F.2d

1567, 1570 (9th Cir. 1987) (finding interest did not constitute an "investment contract" where family of sophisticated individuals invested in drilling operations but retained managerial power). The key difference, they insist, relates to the degree of control plaintiffs exercised.

Defendants assert that all plaintiffs in fact "actively managed and developed the property along with Amado . . . ." (Defs.' Opp'n at 13: 9-10.) They argue at least some of the plaintiffs (Amado points to "an officer" of SFRC) signed an application for Hawaiian building and construction permits as co-developers. Amado explains that these plaintiffs exercised at least some control over the hiring of engineers and architects. While he does not point to any contractual provision so providing, Amado contends all plaintiffs maintained an "absolute veto [of] the whole [p]roject." (Defs.' Opp'n at 3:22.) Finally, defendants suggest the principals of the two companies and the Trust are sophisticated individuals with a "high degree of business acumen" and no small amount of experience in complex real estate investments. (*Id.* at 13:6.) On a related note, they contend that Kate and Kevin Donahue's tax attorney, Jeffrey Weiss, actually advised them that the membership interests did not require registration as securities. According to Amado, Weiss helped craft the "Summary of Offering" and "Subscription Booklet" designed for future investors. In any event, they suggest that the handful of documents that reference securities or discuss registration or exemption were created *after* the SFRC and Donahue, O'Shea, LLC, entities (or their principals) purchased membership interests in 2007.

Plaintiffs, by contrast, insist that Amado retained complete managerial control and point to the unadorned language of the October 27 amended Operating Agreement, which provides that "Henry Amado shall be the sole manager of White Sands." The first (although undated) Operating Agreement (presumably, the one that Amado originally offered to Kevin and Kate Donahue) also states that "[t]he General Manager shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to manage, control, administer, and operate the business." The next section does provide, however, that Amado would not have power, without the approval of a majority of members, to, among other listed activities, engage in any capital transaction, to make large loans of

No. C 09-2054 RS
ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

7

the Company's assets, or in some context, to admit other members.[2] Defendants point out that these contracts were adopted *before* plaintiffs by their conduct took on the more engaged role detailed above.

Accordingly, the parties present two entirely different factual scenarios to explain the plaintiffs' involvement in the development project. The determination of whether the membership and TIC interests were "securities" and subject to the registration requirements under the 1933 Act depends upon resolution of these disputed facts. The question is not, therefore, one that can be answered at the summary judgment phase and plaintiffs' motion must be denied.[3]

## IV.  CONCLUSION

As the plaintiffs have not presented undisputed facts to establish that the membership and TIC interests were securities, their motion for summary judgment on their section 12(a)(1) claim must be denied.

IT IS SO ORDERED.

Dated: 06/04/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs also point to the language of the Amended Operating Agreement that referenced the interests: "The LLC membership interests . . . have not been registered with the Securities And Exchange Commission under the Securities Act of 1933 or under the laws of any state in reliance upon exemption under those Acts." From this language, plaintiffs suggest defendants acknowledged from the outset that the membership interests were securities but, presumably, assumed the offering of those interests to plaintiffs did not constitute a "public offering." *See* 15 U.S.C. § 77d(2) (exempting "transactions by an issuer not involving any public offering" from registration requirements). Defendants counter that the Donahue's tax attorney helped craft this document and is responsible for its language.

[3] Defendants in their opposition papers also argue that the SFRC and Donahue, O'Shea entities may not in any event bring a section 12(a)(1) claim because they arguably attempt to do so outside the applicable statutory limitations period. Because plaintiffs have not yet shown that the the interests at stake were securities, the Court does not reach the question of whether some plaintiffs' possible section 12(a)(1) claims are time-barred.