1  **DILLINGHAM & MURPHY, LLP**
   DENNIS J. KELLY (SBN 191414)
2  HSIAO C. (MARK) MAO (SBN 236165)
   PATRICK J. SUTER (SBN 242494)
3  BROOKE S. PURCELL (SBN 260058)
   225 Bush Street, 6th Floor
4  San Francisco, California 94104-4207
   Telephone:    (415) 397-2700
5  Facsimile:    (415) 397-3300
   djk@dillinghammurphy.com
6  mcm@dillinghammurphy.com
   pjs@dillinghammurphy.com
7  bsp@dillinghammurphy.com

8  Attorneys for Defendants
   PACIFIC WEST SECURITIES, INC.,
9  ASPIRE REAL ESTATE, INC., ASPIRE
   INVESTMENTS, INC., and EDWARD S. BRODA
10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13  SAN FRANCISCO RESIDENCE CLUB, INC., DONAHUE O'SHEA, LLC, THOMAS P. 14  O'SHEA, individually and as TRUSTEE FOR THE TRUST OF THOMAS P. AND ANNE 15  O'SHEA, <br><br> 16              Plaintiffs, <br><br> 17  v. <br><br> 18  HENRY A. AMADO, ABACUS FINANCIAL GROUP, LLC, WHITE SANDS ESTATES, 19  LLC, EDWARD S. BRODA, ASPIRE REAL ESTATE, INC., ASPIRE INVESTMENTS, 20  INC., PACIFIC WEST SECURITIES, INC., GREGORY FISH and G.D. FISH & 21  ASSOCIATES, and DOES 1 through 100, inclusive, <br> 22 <br>              Defendants. <br> 23 | Case No. 3:09-CV-02054-RS <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' ASPIRE REAL ESTATE, INC., AND EDWARD S. BRODA'S MOTION FOR SUMMARY JUDGMENT <br><br> Date:   January 27, 2011 <br> Time:  1:30 p.m. <br> Dept.  Courtroom 3, 17th Floor <br> Judge: Richard Seeborg |

24

25

26

27

28

TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 2

    A.    Background regarding the Parties .......................................................... 2

    B.    Mr. Broda Was At All Times An Independent Contractor ..................... 3

    C.    Plaintiffs' Prior Dealings With Mr. Broda, PWS, and Aspire Investments ............ 3

    D.    Plaintiffs' Purchase and Attempted Development of the Real Property At Issue .... 3

III. ARGUMENT ..................................................................................................... 6

    A.    Applicable Legal Standards ................................................................... 6

    B.    Moving Defendants Are Entitled to Summary Judgment For All Claims Against It Because No "Security" or Investment Existed At the Time of the Alleged "Sale" . 8

    C.    Moving Defendants Are Entitled to Summary Judgment for All Claims Against them Because Neither Violated Federal Securities Laws In Connection With Plaintiffs' Investments ................................................................................................. 8

        1.    The Investments at Issue Were Not Securities ................................. 8

        2.    Assuming, A*rguendo*, the Investments Were Securities, They Were Private Offerings Exempt from Registration, Thereby Precluding Plaintiffs' 12(a)(1) Claim ................................................................................................. 10

        3.    Moving Defendants Were Not Statutory "Sellers" .................................... 12

    D.    Moving Defendants Are Entitled to Summary Judgment Because Plaintiffs Have Failed to Establish, With Any Certainty, That They Have or Will Suffer Any Damages As A Result of Any of Their Alleged Claims ...................................................... 12

    E.    In the Alternative, Moving Defendants Are Entitled to Partial Summary Judgment of Plaintiffs' Claims .............................................................................................. 14

        1.    Third Cause of Action for Violation of Section 12(a)(2) of the Securities Act of 1933 and Plaintiffs' Claim of violation of Section 12(a)(1) of the Act ...... 14

        2.    Seventh Cause of Action for Violation of Cal. Civ. Code § 3372 (Investment Advisor Liability) ................................................................................. 15

        3.    Eighth Cause of Action: Unfair and Deceptive Practices ......................... 16

        4.    Eleventh Cause of Action: Breach of Fiduciary Duty ................................ 17

IV. CONCLUSION ................................................................................................. 19

1          TABLE OF AUTHORITIES

2                                                                    Page(s)

3     ***Cases***

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ............................................. 8

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App.4th 226, at 244 (Cal. Ct. App. 2007) ..................................................................................................... 19, 20

*Black v. Shearson, Hammill & Co.,* 266 Cal.App.2d 362, 72 Cal.Rptr. 157 (1968) ........................... 19

*Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) ................................... 8

*Bowen v. Ziasun Technologies, Inc.*, 116 Cal.App.4th 777, 788 (2004) ..................................... 17

*Branick v. Downey Sav. And Loan Ass'n*, 39 Cal. 4th 235 (2006) ........................................... 19

*Californians for Disability Rights v. Mervyn's, LLC*, 29 Cal. 4th 223, 227 (Cal. 2006) .................... 18

*Caminetti v. Manierre*, 23 Cal. 2d 94 (1943) ............................................................ 14

*Commercial Union Assur. Co. v. Pac. Gas & Elec. Co.*, 220 Cal. 515 (1934) ................................ 14

*Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 221 ..................... 19

*Deutsch Energy Co. v. Mazur*, 813 F.2d 1567 (9th Cir. 1987) ......................................... 10, 11

*Dietrich v. Bauer*, 76 F.Supp.2d 312, 351 (SD NY 1999) ................................................... 18

*Fox v. Pollack*, 181 Cal.App. 3d 954, 959 (1986) ........................................................ 19

*Garfield v. Strain*, 320 F.2d 116 (10th Cir., 1954) ..................................................... 12

*Green Wood Indus. Co. v. Forceman Int'l Dev. Group*, 156 Cal.App.4th 766 (Cal. Ct. App. 2007) . 14, 15

*Griffith Co. v. San Diego College for Women*, 45 Cal. 2d 501 (1955) ..................................... 14

*In re Charles Schwab Corp. Securities Litigation*, 257 F.R.D. 534 (ND CA 2009) .......................... 17

*Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ........................................... 8

*Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ..................................................... 8

*Kennedy Funding, Inc. v. White Sands Estates, LLC, et al.* .............................................. 8

*Khoury v. Maly's of California, Inc.*, 14 Cal.App. 612, 619 (1993) ...................................... 18

*Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) .................................. 8

*McMillan v. E.F. Hutton & Co. Inc.,* 399 F.Supp. 1153 (N.D.Cal.1975) ..................................... 19

1 | *Medina v. Safe-Guard Products*, 78 Cal.Rptr.3d 672, 164 (2008) .......................................... 18

2 | *Overstock.com, Inc. v. Gradient Analytics, Inc.* 151 CA4th 688 (2007) ............................... 17

3 | *Perera v. Chiron Corp.*, 1996 WL 251936 (ND CA 1996) ...................................................... 18

4 | *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1591-92 (2008) ............................. 18

5 | *Pinter v. Dahl*, 486 U.S. 622 (1988) ....................................................................................... 13

6 | *Ralston Purina*, 346 U.S. 119, 125 (1953) .............................................................................. 11

7 | *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1090-91 (9th Cir. 2010) ............... 11

8 | *SEC. v. Murphy*, 626 F.2d 633, 640-641 ................................................................................. 10

9 | *SEC. v. WH Howey Co.*, 328 U.S. 293 (1946) .......................................................................... 10

10 | *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388 (9th Cir. 1988) ................................ 17

11 | *Vicioso v. Waston*, 325 F.Supp. 1071, 1078 (C.D. Cal. 1971) ......................................... 11, 12

12 | *Walsh v. Hooker & Fay,* 212 Cal.App.2d 450, 28 Cal.Rptr. 16 (1963) ................................ 19

13 | **Statutes**

14 | California Business and Professions Code Section 17200 .......................................................... 17

15 | California. Business. and Professions Code Section 17204 ........................................................ 18

16 | California Civil Code Section 3372 ..................................................................................... 16, 17

17 | 15 U.S.C. §77 .............................................................................................................. 11, 13, 15

18 |

19 | **Other Authorities**

20 | Section 1031 of the Internal Revenue Code ............................................................ 5, 6, 7, 12, 13

21 | Securities Act of 1933 ............................................................................................ 2, 9, 15, 16, 18

22 | **Rules**

23 | Fed. R. Civ. P. 56(a) ..................................................................................................................... 8

24 | **Treatises**

25 | 5 Witkin, Cal. Procedure (3d ed. 1985) ..................................................................................... 18

26
27
28

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE, INC., AND ASPIRE INVESTMENTS, INC .

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Edward S. Broda and Aspire Real Estate, Inc. ("Aspire RE") (collectively "Moving Defendants") move for summary judgment as to all claims against them, or, in the alternative, for partial summary judgment as to each claim.

Plaintiffs San Francisco Residence Club, Inc., Donahue O'Shea, LLC, Thomas P. O'Shea, and the Trust of Thomas P. and Anne O'Shea (collectively, "Plaintiffs") purchased real property located in Kona, Hawaii, and invested in its development. The land development project is commonly referred to as White Sands Estates ("WSE"). Plaintiffs were introduced to the individuals organizing the purchase and development of WSE, co-defendants Henry Amado and Gregory Fish, by co-defendant Edward S. Broda, a former registered representative and independent contractor of PWS. Mr. Broda is also the founder and President of co-defendants Aspire Investments and Aspire Real Estate. Plaintiffs sued all defendants to the action, claiming that their investment in WSE constituted an unregistered security which they purchased through Mr. Broda.

As discussed in greater detail below, summary judgment on behalf of Moving Defendants is appropriate for numerous reasons. First, Plaintiffs' third cause of action for violation of Section 12(a)(2) of The Securities and Exchange Act, as well as their claim that Moving Defendants violated Section 12(a)(1) of the Act, fail for a fundamental reason – there was no "security" in existence at the time of Plaintiffs' investment. Second, even assuming *arguendo* that the investments at issue in this case did involve securities (which they did not), the transactions Plaintiffs entered into were private offerings and thus exempt from registration. Third, Plaintiffs, as a matter of law, cannot establish that any of the Moving Defendants were "statutory sellers" for purposes of the Securities and Exchange Act.

More broadly, as to Plaintiffs' third, fifth, seventh, eighth, ninth, eleventh and twelfth causes of action, the undisputed material facts are clear that none of the Moving Defendants engaged in *any* actionable conduct. With regard to Mr. Broda, the undisputed evidence shows that Mr. Broda merely referred Plaintiffs to Amado and Fish and did not otherwise participate in the Plaintiffs' decision to invest in WSE. With respect to Aspire Real Estate, Inc., Plaintiffs' claims are even more

1    tenuous.  Plaintiffs' have not so much as pled a single fact against it.  Plaintiffs have not shown the

2    existence of any contract they had with Aspire RE.  Moreover, Plaintiffs have put forth no allegations

3    or evidence to show: (1) that Aspire RE purports to sell securities; (2) that Aspire RE actually sold

4    securities to Plaintiffs; or (3) that Aspire RE earned any commissions or fees from Plaintiffs for the

5    subject transactions to this lawsuit.  Instead, Plaintiffs, without any factually basis, seek to impart

6    liability to it under a theory of vicarious liability based on Mr. Broda's conduct.  However, given the

7    absence of any actionable conduct by Mr. Broda, Plaintiffs' claims are irreparably flawed.

8        As set forth below, Plaintiffs' attempt to pin any liability on any of the Moving Defendants is

9    unsupportable by the facts and the law.  Accordingly, Moving Defendants are entitled to summary

10   judgment as to each of the claims alleged against them.  Alternatively, Moving Defendants are

11   entitled to partial summary judgment as to each claim.

12                              **II.    FACTUAL BACKGROUND**

13   **A.    Background regarding the Parties**

14       The San Francisco Residence Club, Inc., Donahue, O'Shea, LLC ("DOS"), and the Trust of

15   Thomas P. and Anne O'Shea (the "Plaintiff entities") were all created and controlled by members of

16   the Donahue and O'Shea families.  (FAC ¶¶ 1-4.)  Over the last five decades, the Plaintiff entities and

17   the individual members and owners of the entities have made millions of dollars through numerous

18   real estate developments and investments.

19       Plaintiff Thomas P. O'Shea is married to Anne (Donahue) O'Shea and is suing on behalf of

20   the Trust of Thomas P. and Anne O'Shea.

21       Defendant PWS is a family-founded independent broker-dealer based in Renton, Washington.

22   (Declaration of Tony Pizelo ("Pizelo Decl."), ¶ 2.)   PWS is registered with both the Securities and

23   Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA").

24   (Pizelo Decl., at ¶ 2.)   PWS maintained an independent contractor arrangement with co-defendant

25   Edward S. Broda, whereby Mr. Broda acted as a registered representative of PWS.  (Pizelo Decl., ¶¶

26   3, 4; Exhibit ("Exh.") 1 to Pizelo Decl.; Broda Decl., ¶ 3.)

27       Defendant Aspire Investments is a Danville, California company  founded by Mr. Broda in

28   2006 to market and sell securitized tenant in common ("TIC") interests to investors.  (Deposition of

1  Edward S. Broda ("Broda Depo.") at pp. 8:2-10, 12:10-13.)  Aspire Investments sells these

2  securitized TICs through its affiliation with PWS.  (Broda Depo., at p. 10:8-20; Broda Decl., ¶ 9.)

3        Defendant Aspire Real Estate was a corporate entity, founded by Mr. Broda, to engage in real

4  estate transactions.  (Broda Depo., at p.16:11-20; Broda Decl., ¶ 10 .)   That entity has since been

5  dissolved.  (Broda Depo., at p. 15:5-9; Broda Decl., ¶ 10.)

6  **B.**   **Mr. Broda Was At All Times An Independent Contractor**

7        Mr. Broda began his affiliation with PWS when he became an independent contractor

8  registered representative of the company.  (Broda Decl., ¶ 2-3; Pizelo Decl., ¶ 3, Exh. 1 thereto.)

9  That relationship was governed by a number of agreements, policies and procedures, including: the

10  "Pacific West Securities, Inc. Registered Representative Independent Contractor Agreement" (the

11  "Independent Contractor Agreement"); the "Outside Business Activity Real Estate Agent or Broker"

12  (the "OBA Agreement"); and PWS' policies and procedures as outlined in PWS' Registered

13  Representative Manual ("Manual") (Broda Decl., ¶¶ 3-8; Pizelo Delc., ¶¶ 4-11, Exhs. 1 through 4

14  attached thereto.)

15  **C.**   **Plaintiffs' Prior Dealings With Mr. Broda, PWS, and Aspire Investments**

16        Prior to the transactions at issue, members of both the Donahue and O'Shea families opened

17  accounts with PWS, through Mr. Broda.  (Pizelo Decl., ¶ 12 and Exh. 5 attached thereto; Broda

18  Decl., ¶¶ 14-15.)  In fact, prior to Mr. Broda's affiliation with PWS, both families maintained

19  accounts, through Mr. Broda, with his prior broker-dealer, Sigma Financial.  (Broda Decl., ¶ 14.)

20  Through Mr. Broda, Members of both families invested in securitized tenant in common ("TIC")

21  investments.  (Broda Decl., ¶¶ 14-15.)

22        At no point did any of the Plaintiffs, or the individual members of the Donahue and O'Shea

23  families, enter into investment advisory agreements with Mr. Broda, PWS, Aspire Investments, or

24  Aspire Real Estate.  (Broda Decl., ¶ 19; Pizelo Decl., ¶ 15.)

25  **D.**   **Plaintiffs' Purchase and Attempted Development of the Real Property At Issue**

26        In 2007, the Donahues and O'Sheas (hereinafter referred to as the "Donahues") wanted to

27  avoid the tax implications of millions of dollars in capital gains on recently-sold real property and

28

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE,
INC., AND ASPIRE INVESTMENTS, INC.

1    contacted Mr. Broda regarding possible opportunities to affect a "like-kind" exchange pursuant to

2    Section 1031 of the Internal Revenue Code (an "IRC 1031 exchange").  (Broda Decl., ¶¶ 21.)

3
          At the time, Mr. Broda attempted to offer the Plaintiffs securitized TICs through PWS, but the
4
     Donahues were not interested in such investments.  (Broda Decl., ¶¶ 22-24.)  Rather, they were
5
     looking for investments in real estate, not securities, and Mr. Broda referred them to Messrs. Amado
6
     and Fish.  (Deposition of Henry Amado ("Amado Depo.") p. 163:9-17; Broda Decl., ¶ 24.)
7
          Mr. Broda did not notify or request authority from PWS to refer the Donahues to Messrs.
8
     Amado and Fish.  (Broda Decl., ¶ 28; Pizelo Decl., ¶ 16.)  After the referral, the Donahues, with the
9
     assistance of their own counsel, dealt directly with Amado and Fish – without much, if any,
10
     involvement from Mr. Broda.  (Amado Depo, p. 173:9-14; Broda Decl., ¶¶ 26.)
11
          Mr. Broda told the Donahues that he knew Messrs. Amado and Fish were attempting to
12
     purchase land and build condominiums in Kona, Hawaii.  (Broda Decl., ¶¶ 24.)  At the time of the
13
     referral, Amado and Fish were looking to acquire a 42-acre parcel of real property (hereinafter the
14
     "Property"), for the purpose of building condominiums (hereinafter the "Project").  However, Amado
15
     and Fish were still in the process of trying to secure financing and had yet to acquire the Property.
16
     (See Purcell Decl., Exh. A, AMK587 00286 (on settlement date); Broda Decl., ¶¶ 24, 30.)
17
          After independently assessing the Property and discussing the matter with their own attorneys,
18
     the Donahues saw the Project as a business opportunity and a tax-saving vehicle.  The Donahues
19
     immediately involved their real estate and tax attorney, Jeffrey Weiss, to make sure that their
20
     investment would be characterized as an investment in real estate, and not securities.  (Amado Depo.,
21
     pp. 164:18-25; 165:1-15.)  Weiss was concurrently implementing other IRC § 1031 exchanges for
22
     several of the Plaintiffs, and provided tax advice and counseling for members of the families.
23
     (Amado Depo., pp. 145:8-25; 146:1; 164:23-25; 165:1-15.)
24
          Weiss told Messrs. Amado and Fish that it was critical for the Donahues that the funds they
25
     provided be reinvested into other "like-kind" real estate, as opposed to securities.  (Amado Depo., pp.
26
     67:21-25; 68:1-17; 91:3-9.)  The Donahues and Weiss were "adamant" that their investment would be
27
     real estate, and not securities.  (Amado Depo., pp. 165: 7-15.)  Weiss set up the investment structure
28

1    for the Donahues, and made sure that they would retain control of the finances and construction

2    process for the Project.  (Amado Depo., pp. 145:8-25; 146:1; 82:22-25; 83:1-17.)

3        In addition, the Donahues also hired Hawaiian attorney William Deeley to assist on the

4    Project.  (Purcell Decl., Exhs. B and C.)  With the assistance of both Weiss and Deeley, the

5    Donahues, Amado, and Fish managed to secure funding for the acquisition of the Property from

6    Kennedy Funding Inc. ("Kennedy"), in November 2007.  (Purcell Decl., Exh. B and C.)  Plaintiff

7    SFRC was a co-borrower for the loan.  (Purcell Decl., Exh. D.)

8        On or about November 13, 2007, escrow closed on the Property.  (Purcell Decl., Exh. A.)  At

9    that time, the Jeff Culver Revocable Trust was the only other owner of the Project in addition to the

10   holding entities of the Donahues, Amado, and Fish.  (Purcell Decl., Exh. E.)

11       The Donahues have been active investors who directly managed and developed the Project.

12   In crafting the project, the Donahues asked Weiss to make sure that they: (1) retained the right to

13   control how the Kennedy loan proceeds would be used; (2) would be able to control the construction

14   process; (3) would retain an "absolute veto" in the whole Project; and (4) retained control over the

15   hiring of engineers, architects, and other professionals working on the Project.  (Amado Depo., pp.

16   81:7-25; 82:1-25; 83:1-17; 87:5-25; 88:1-7.)  Plaintiffs also identified themselves as "developers" of

17   the Project in the building permit they applied for with the State of Hawaii.  (Amado Depo., pp.

18   81:19-21; 87:3-17.)

19       Plaintiffs did not make their investments in the Property after they received any "offering

20   documents," as alleged in the FAC, but rather with the advice of their lawyer, Mr. Weiss.  In fact,

21   Plaintiffs' counsel, Mr. Weiss, participated in the preparation of the actual offering documents.

22   (Amado Depo., p. 163:18-25; 164:1-2.)  As the "Summary of Offering" (Amado Depo. Exh. 4) and

23   "Subscription Booklet" (Amado Depo. Exh. 8) show, these documents were all written *after*

24   Plaintiffs acquired the Property and *after* Plaintiffs began developing the Project.  (Amado Depo.,

25   Exh. 4, EB00311 [discussing the acquisition date of the Property]; Amado Depo., Exh. 8, EB00289-

26   00291 [all dated 2008]; see also Amado Depo., pp. 64:18-25; 65:1-7; 163:18-25; 164:1-2.)

27       After Mr. Weiss prepared the Subscription Booklet and Summary of Offering, he advised co-

28   defendants Amado and Fish that the Project did not need to be registered with the SEC, and that the

1   parties should revisit the issue only if the Plaintiffs' investments failed to qualify as an IRC § 1031

2   exchange.  (Amado Depo., p. 72:18-25; 73:1-25; 74:1-2.)  Because the Donahues wanted their

3   investment to qualify as an IRC § 1031 exchange, they were "adamant with Mr. Weiss that the

4   transaction would qualify under Section 1031 and were real estate transactions and would not be

5   deemed a security and, therefore, violate the like-kind rules."  (Amado Depo., p. 165:11-15.)

6        Motivated to seek additional owners due to their own liquidity problems, in early 2008, the

7   Donahues discussed with Amado trying to obtain additional owners for the Project.  (Amado Depo.,

8   pp. 64:18-25; 65:1-7; 72:18-25; 73:1-18.)  The Donahues also asked if Mr. Broda would assist in this

9   effort.  (Broda Decl., ¶ 38.)  Weiss was involved in discussing whether the parties needed to prepare a

10  "subscription booklet" and whether the Project needed to be registered with the SEC.  (Amado Depo.,

11  pp. 64:18-25; 65:1-7; 72:18-25; 73:1-10.)

12       PWS did not receive any commission or any payment of any kind in connection with the

13  WSE development project.  (Broda Depo., pp. 25:13-15; 26:15-18; Pizelo Decl., ¶ 19; Broda Decl., ¶

14  35.)  No manager or employee of PWS was even aware of Plaintiffs' investments in White Sands

15  until this case was filed.  (Pizelo Decl., ¶ 16.)

16       As of the filing of this Motion, the Plaintiffs have not suffered any damages related to their

17  investments at issue: their purchase of real property in Kona, Hawaii, and the attempted development

18  of that land.  While a foreclosure action is currently pending in Hawaii (see *Kennedy Funding, Inc. v.*

19  *White Sands Estates, LLC, et al.*, Case No. 09-00191-JMS-BMK, that case has not concluded and the

20  real property purchased by Plaintiffs has not been foreclosed upon.  (see Request for Judicial Notice

21  ("RJN".)  Unless and until the property is foreclosed upon or some other event occurs to cause the

22  Plaintiffs to sustain a loss, Plaintiffs' claims to damages is uncertain and purely theoretical.

23                                    **III.   ARGUMENT**

24  **A.    Applicable Legal Standards**

25       Summary judgment shall be granted when the evidence demonstrates that there is no genuine

26  dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.

27  R. Civ. P. 56(a).  A dispute is "genuine" only if there is sufficient evidence for a reasonable fact

28

finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.*, at 248.

A party opposing a motion for summary judgment bears the burden of establishing the existence of a genuine dispute of material fact. *Anderson*, *supra*, 477 U.S. at 248-49. The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Mere speculation or inference by the non-moving party cannot create a genuine issue of material fact. Moreover, a mere disagreement about a material issue of fact does not preclude summary judgment. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990).

When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998). Thus, the essential question here is whether a reasonable fact finder could return a verdict for Plaintiffs against Moving Defendants, or whether the moving party, at trial, would be entitled to judgment as a matter of law. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Moving Defendants move for summary judgment as to all claims and causes of action alleged against it because: (1) no security or investment existed at the time Mr. Broda referred Plaintiffs to Amado and Fish; and (2) Plaintiffs' purchase and attempted development of the Hawaii Property was not a security under federal securities laws, or, if it was, it was a properly exempt private placement and neither PWS or Mr. Broda were statutory sellers. Aspire RE does not engage in the sale of securities and never purported to sell a security to the Plaintiffs here.

In the alternative, Moving Defendants move for partial summary judgment as to the four causes of action alleged against it: (1) Plaintiffs' Third Cause of Action for violation of Section 12(a)(2) of the Securities Act of 1933; (2) Plaintiffs' Seventh Cause of Action for violation of Cal. Civ. Code section 3372; (3) Plaintiffs' Eighth Cause of Action for unfair and deceptive practices in violation of Cal. Bus. & Prof. Code; (4) Plaintiffs' Eleventh Cause of Action for Breach of Fiduciary Duty; and (5) Plaintiffs' claim for violation of Section 12(a)(1) of the Securities Act of 1933.

**B.** **Moving Defendants Are Entitled to Summary Judgment For All Claims Against It Because No "Security" or Investment Existed At the Time of the Alleged "Sale"**

Plaintiffs' entire case against Moving Defendants is largely based upon Plaintiffs claim that Mr. Broda and Aspire RE marketed and sold securities to Plaintiffs in violation of Sections 12(a)(2) and 12(a)(1) of the Securities Act of 1933 as well as California law.  (FAC ¶¶ 22, 80-84; Docket No. 94.)

However, at the time Mr. Broda referred the Donahues to Messrs. Amado and Fish, the Project had not yet taken shape (Broda Decl., ¶ 24, 30) and Mr. Broda informed the Donahues that he did not know the details of the Project.  (Broda Decl., ¶ 25.)  Accordingly, the Project **could not have been a security at the time Mr. Broda referred Plaintiffs to Amado and Fish because the structure and type of investment had not yet been determined**.  It was only after the Plaintiffs became involved in the Project that they, together with their attorneys, structured the investment. (Amado Depo., pp. 82:22-25; 83:1-17; 145:8-25; 146:1; 165:7-15; Broda Decl., ¶ 27.)

Although Moving Defendants assert that Plaintiffs' ultimate purchase and development of the real property at issue in this action did not constitute a "security," as defined in the Securities Act of 1933 (see Section (D)(2), *infra*), even if the Court reaches an alternative conclusion, indisputable evidence demonstrates that at the time at which Mr. Broda referred the Plaintiffs to Messrs. Amado and Fish, the nature and form of the Project had not taken shape – there was no actual project in existence to invest in.  Mr. Broda could not have sold the Plaintiffs a security; because a security did not exist at the time of the purported sale.  (Amado Depo., p. 173:9-14.)

**C.** **Moving Defendants Are Entitled to Summary Judgment for All Claims Against them Because Neither Violated Federal Securities Laws In Connection With Plaintiffs' Investments**

**1.** **The Investments at Issue Were Not Securities**

The longstanding test for whether a particular investment constitutes an "investment contract," and therefore a security, was outlined by the Supreme Court in *SEC v. WH Howey Co.*, 328 U.S. 293 (1946).  The proper inquiry is: whether an individual: (1) invests money; (2) in a common enterprise; (3) for which the investor expects profits; and (4) the profits are derived solely from the

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE, INC., AND ASPIRE INVESTMENTS, INC.

1    efforts of others.  *Id.*, at 301; see also *SEC v. Murphy*, 626 F.2d 633, 640-641 [an investment contract

2    "involves investment in a common enterprise with profits to come solely from the efforts of others."].

3           Courts have found that where the investor's efforts are significant in the success of the

4    enterprise, and the investors are highly sophisticated business people, an investment contract (and

5    therefore a security) will not exist.  For example, in *Deutsch Energy Co. v. Mazur*, 813 F.2d 1567

6    (9th Cir. 1987) the court found that the investments of a knowledgeable and sophisticated family of

7    investors, who invested in drilling operations and had opportunities to control the drilling operations,

8    were not securities.  *Id.*, at 1570.  In that case, the court held that the transaction "did not constitute an

9    "investment contract," and therefore a "security," because, as possessors of significant managerial

10   powers and a high degree of business acumen, the plaintiffs "could not rightfully expect their profits

11   to be derived solely from the efforts of individuals other than themselves."  *Id.*

12          In the instant case, indisputable evidence demonstrates that Plaintiffs actively managed and

13   developed the Property along with Amado and Fish, just as the plaintiffs did in *Deutsch*:

14   •      SFRC co-signed as a borrower and made numerous representations to Kennedy to

15          induce the loan for the Property.  (See Purcell Decl., Exh. D.)  Plaintiffs' attorneys

16          Weiss and Deeley, acted as Plaintiffs' agents and spent considerable efforts on

17          conducting due diligence on the Kennedy loan.  (Purcell Decl., Exh. B and C.)

18   •      Plaintiffs and their attorneys formed and structured the Project.  (Amado Depo., pp.

19          163:18-25; 164:1-2; Purcell Decl., Exh. B and C.)

20   •      Plaintiffs themselves applied for building permits as the "developer."  (Amado Depo..

21          pp. 81:19-21; 87:3-17.)  Plaintiffs also retained control over the hiring and management

22          of engineers, architects, and other professionals working on the Project.  (Amado Depo.,

23          pp. 87:5-25; 88:1-7.)

24   •      Plaintiffs actively participated in the solicitation of additional owners for the Project.

25          (Amado Depo., pp. 162:24-25; 163:1-8; 72:18-25; 73:1-18; Broda Decl., ¶38.)

26   •      Plaintiffs and Weiss assisted in writing the "Summary of Offering" and "Subscription

27          Booklet."  (Amado Depo., pp. 163:18-25; 164:1-2.)

28

1    Plaintiffs knew at all times that the success or failure of the Project was directly dependent on

2  their efforts.  Instead of relying on the efforts of Amado and Fish, Plaintiffs aggressively sought to

3  control the Project using their own resources and counsel.

4    Where Plaintiffs expended considerable efforts and knew that the success of the Project

5  depended on their efforts, their investment was not a "security."  *Deutsch Energy*, 813 F.2d at 1570.

6  Thus, Plaintiffs' §§ 12(a)(1) and (a)(2) claims must fail because, as a matter of law, Plaintiffs'

7  purchase of the White Sands property was not a security under §§ 12(a)(1) and (a)(2).

8      **2.      Assuming, A*rguendo*, the Investments Were Securities, They Were Private
            Offerings Exempt from Registration, Thereby Precluding Plaintiffs' 12(a)(1)**
9            **Claim**

10    Section 4(2) of the Securities Act of 1933 exempts certain "private offerings" from

11  registration (15 U.S.C. § 77d(2.)  "[T]he applicability of [Section 4(2)] should turn on whether the

12  particular class of persons affected need the protection of the [Securities] Act.  An offering to those

13  who are shown to be able to fend for themselves is a transaction 'not involving any public offering.' "

14  *Ralston Purina*, 346 U.S. 119, 125 (1953).  In other words, "a limited distribution to highly

15  sophisticated investors, rather than a general distribution to the public, is not a public offering."

16  *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1090-91 (9th Cir. 2010).

17    Whether or not an offering is public is a factual inquiry which requires an analysis of factors,

18  including: "the relationship between the purchaser and the seller, and the nature, scope, size, and

19  manner of the offering."  *Vicioso v. Waston*, 325 F.Supp. 1071, 1078 (C.D. Cal. 1971).  "Direct

20  negotiations [by investors] are more likely to be non-public than are those transacted through the

21  machinery of public distribution such as the national exchanges.  The fact that the investor rather than

22  the seller initiates the transaction indicates that a private offering is involved."  *Id*., citing *Garfield v.*

23  *Strain*, 320 F.2d 116 (10th Cir., 1954).

24    Here, Plaintiffs allege no facts and cannot put forth any evidence that their investment in

25  WSE was not a private offering.  Undisputed facts demonstrate that, if a security, the investment

26  constituted a private offering:

27

28

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE,
INC., AND ASPIRE INVESTMENTS, INC.

- Plaintiffs had a personal relationship with Mr. Broda for a number of years; he referred them to Amado and Fish because Plaintiffs were specifically seeking real estate, not securities.  (Amado Depo., p. 165:7-15; Broda Decl., ¶¶ 14-24.)
- Plaintiffs were assisted at all times by their own counsel who structured and put together the Project.  (Amado Depo., p. 163:18-25; 164:1-2; Broda Decl., ¶¶ 27, 32.)
- The nature of the business venture was to develop real estate, not to sell securities.  In fact, Plaintiffs' counsel made sure that it was clear from the operating agreements that Plaintiffs were engaging in real estate development.  (Amado Depo., ¶ 163:18-164:2; Broda Decl., ¶¶ 24, 27.)
- The scope and size of the "offering" was small, as there were only four sets of parties: Plaintiffs, Amado, Fish, and Jeff Culver.  (Purcell Decl., Exhs. D and E.)
- Plaintiffs intentionally sought IRC § 1031 exchanges, and they were not "solicited." (Amado Depo., p. 163:9-17, Broda Decl., ¶¶ 21-24.)

In *Vicioso,* the court held that the investment was a "joint venture," exempt from registration. *Vicioso*, *supra*, at 1078.  The plaintiffs in that case sought rescission for assignment of leases, alleging that the unregistered assignments were violations of § 12(a)(1).  In assessing the plaintiffs' claims, the Court noted plaintiffs "were in need of a tax shelter and solicited defendant…through their [plaintiffs'] accountant."  *Id.* at 1078.   The court also found that the offering was "limited" because there were only two other investors (the plaintiffs) in addition to the defendants, and plaintiffs had directly negotiated and consummated the transaction.  *Id.*  In denying the § 12(a)(1) claim, the Court stated that this was an exempt "joint venture" because:

> "In the case at bar, the transaction was initiated by the investors…and consummated through direct negotiations.  It was a modest offering extending to two people only…it is clear that the transaction involved in the present case falls in the area of private offering.  Therefore, defendants' assignment of the lease interests to plaintiffs did not violate the federal securities laws, despite the absence of a registration statement." (*Id.* at 1078.)

The facts in this case are nearly identical to *Vicioso*.  Plaintiffs intentionally sought a § 1031 exchange, and they solicited the defendants through Mr. Broda.  In addition to the Plaintiffs, the only other owner was Mr. Culver.  Plaintiffs and their attorneys negotiated, structured, and set up the

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE, INC., AND ASPIRE INVESTMENTS, INC.

1   entire Project.  Therefore, even if Plaintiffs purchased securities (which they did not), the private sale

2   exemption would have applied just as it did in *Vicioso*.

3       **3.   Moving Defendants Were Not Statutory "Sellers"**

4       Section 12 states that an individual who "offers or sells a security [in violation of § 12] shall

5   be liable . . . to the person purchasing such a security from him."  (15 U.S.C.A. § 77l.)  In *Pinter v.*

6   *Dahl*, 486 U.S. 622 (1988), the Supreme Court admonished against taking an overly broad

7   interpretation of "seller," particularly in light of the "strict liability nature of the statutory cause of

8   action."  *Id.*, at 647-652.

9       In the instant case, instead of being solicited by Moving Defendants, it was *Plaintiffs who*

10  *solicited Mr. Broda* (Amado Depo., p. 163:9-17) because Plaintiffs were seeking IRC § 1031

11  exchanges (Amado Depo., p. 165:2-6).  At the time of Plaintiffs' solicitation, the Project had yet to

12  come into existence.  (See Purcell Decl., Exh. A.)  Amado and Fish were not yet able to secure

13  financing or purchase the Property.  (Purcell Decl., Exhs. A and D.)  Weiss had yet to draft the

14  Project documents on behalf of all the parties.  (Purcell Decl., Exhs. B and C.)  Neither Moving

15  Defendant was not a statutory "seller" because there was no "security" at the time; Mr. Broda made

16  nothing more than a referral for a, then potential, real estate development project.

17      There is no evidence that Moving Defendants actually "sold" anything to Plaintiffs in

18  connection with the transactions at issue.  At best, Mr. Broda attempted to bring Plaintiffs together

19  with Amado and Fish.  Plaintiffs' investment and attempted development of WSE did not constitute a

20  "security."  Accordingly, as a matter of law, PWS is entitled to judgment in its favor.

21  **D.   Moving Defendants Are Entitled to Summary Judgment Because Plaintiffs Have Failed**
22  **to Establish, With Any Certainty, That They Have or Will Suffer Any Damages As A**
    **Result of Any of Their Alleged Claims**

23      For Plaintiffs' claims to survive summary judgment, there must be triable issues of material

24  fact as to whether Plaintiffs have suffered any damages as a result of the alleged tortuous conduct.

25  However, if a claim for damages is uncertain as to their nature or existence, such uncertainty is fatal.

26  *Griffith Co. v. San Diego College for Women*, 45 Cal. 2d 501 (1955).  It is well-settled that a plaintiff

27  must be able to show with reasonable certainty that future harm from the commission of a tort will

28  actually accrue in the future.  *Caminetti v. Manierre*, 23 Cal. 2d 94 (1943).  The mere possibility, or

1    even probability, that damage will result from a wrongful act does not render it actionable.  *Green*

2    *Wood Indus. Co. v. Forceman Int'l Dev. Group*, 156 Cal.App.4th 766 (Cal. Ct. App. 2007).   An

3    award for damages may not be based purely on speculation or conjecture that harm may accrue.

4    *Commercial Union Assur. Co. v. Pac. Gas & Elec. Co*., 220 Cal. 515 (1934).

5           Plaintiffs' third, fifth, seventh, eighth, ninth, eleventh and twelfth causes of action must fail

6    against Moving Defendants because Plaintiffs have neither suffered any damages, nor can they

7    establish with any degree of certainty that they will suffer any damages at any time in the future.

8    Here, Plaintiffs have merely demonstrated that they have invested a sum of money in real estate

9    which they anticipated developing.   Plaintiffs have made no showing that they will not recoup their

10   investment, will not earn a profit from their investment or that they will actually suffer any loss in the

11   future.  Instead, Plaintiffs have merely alleged that they "face the *prospect* of a total loss of their

12   investment."  (FAC at ¶21) (emphasis added).   Plaintiffs' damages claims are impermissibly

13   speculative.

14          Plaintiffs' contentions regarding the "prospect" of future losses is based on the alleged fact

15   that WSE is presently unable to service the principal and subordinated debt on the property.  (FAC at

16   ¶21).  First, those alleged damages, as they are asserted, relate to a loan taken out by the Plaintiffs

17   with a non-party, Kennedy Funding, and therefore are not "damages" related to any alleged securities

18   at issue in this lawsuit.  Second, Plaintiffs' claim of losses related to loans is the subject of Plaintiffs'

19   fraud cross-complaint against the lender Kennedy Funding in the Hawaii action.  (RJN 1.)

20          Plaintiffs have not put forth _any_ facts, or even alleged any facts, sufficient to show that the

21   Property has been foreclosed upon or that they will otherwise *actually* incur any loss.  Instead,

22   Plaintiffs merely state that a foreclosure action has been *commenced* on the Property by Kennedy

23   Funding, Inc. (*Id*.) Plaintiffs have a pending cross-complaint in the Hawaii action, against the lender,

24   Kennedy Funding.  (See RJN 1, 2.)  If successful, Plaintiffs will avoid foreclosure on the property

25   and may obtain rescission or money damages, in which case they will have suffered no damages

26   whatsoever.

27          The fact that a foreclosure action is pending, without more, is of no consequence.  It is pure

28   conjecture that a foreclosure action set for trial in October 2011 will ultimately result in a loss to

1   Plaintiffs.  (*See* Exhbit A to Defendants' Request for Judicial Notice.)   Plaintiffs have asserted a

2   cross-complaint for fraud which might just as easily prevent the foreclosure and yield Plaintiffs a

3   judgment of money damages.  Thus, the fact of the foreclosure lawsuit does not satisfy the necessary

4   element of certain damages.  Damage to Plaintiffs is only one possible outcome as a result of the

5   pending foreclosure action.  And even if there was actual potential damage, the amount of such

6   damage is entirely unknown.  As a matter of law, a theoretical possibility of damage is insufficient

7   for Plaintiffs' claims to survive.  See, e.g., *Green Wood Indus. Co*., *supra*, 156 Cal.App.4th at 776.

8   **E.      In the Alternative, Moving Defendants Are Entitled to Partial Summary Judgment of**
    **Plaintiffs' Claims**

9

10          **1.      Third Cause of Action for Violation of Section 12(a)(2) of the Securities Act of**
            **1933 and Plaintiffs' Claim of violation of Section 12(a)(1) of the Act**

11          Section 12(a)(2) of the Securities Act of 1933 prohibits offering or selling a security "by

12  means of a prospectus or oral communication, which includes an untrue statement of a material fact

13  or omits to state a material fact necessary in order to make the statements ... not misleading."  (15

14  U.S.C.A. § 77l(a)(2).)   Section 12(a)(1) prohibits the sale of unregistered securities that are not

15  exempt from registration with the SEC.  (15 U.S.C.A. § 77l(a)(1).)

16          As addressed more fully in Section III(B)-(C)(2)(a), *supra*, the transactions at issue in this

17  matter were not securities and do not meet the test laid out by *Howey* and its progeny, because: (1) at

18  the time Mr. Broda referred Plaintiffs to Amado and Fish, the Project had not taken shape and

19  therefore there was no security (see Section III(B)); and (2) the Plaintiffs were active participants in

20  the development of White Sands, thereby defeating a critical element the *Howey* test, accordingly,

21  there could be no violation under either section 12(a)(1) or 12(a)(2).  (Section III(C)(2)(a)(i).)

22          Even assuming, *arguendo*, the transactions constituted securities under the *Howey* test,

23  Plaintiffs' 12(a)(1) claim fails, as a matter of law, because the transactions were proper private

24  offerings exempt from registration, under Section 4(2) of the Securities Act of 1933.  (Section

25  III(C)(2)(a)(ii).)  Further, neither Moving Defendant was a statutory seller for the purpose of

26  §12(a)(2) of the Securities Act of 1933.  (Section III(C)(2)(a)(iii).)

27          Plaintiffs' 12(a)(2) claims fail because indisputable evidence demonstrates that: (1) Mr. Broda

28  did not offer or sell the investments to Plaintiffs, rather, Plaintiffs contacted Mr. Broda and he

referred them to Amado and Fish (Broda Decl., ¶¶ 21-26); (2) Mr. Broda did not make any offer to the Plaintiffs by means of a prospectus – indeed no prospectus existed at the time of Plaintiffs' investment as the project had not yet taken shape (Purcell Decl., Exh. A; Broda Decl., ¶ 27); and (3) Mr. Broda did not make any untrue statement or omission of material fact in any alleged prospectus – rather, Mr. Broda was entirely uninvolved in the formation and structuring of the Project, once he referred Plaintiffs to Amado and Fish.  (Broda Decl., ¶ 27.)

**2.    Seventh Cause of Action for Violation of Cal. Civ. Code § 3372 (Investment Advisor Liability)**

In their Seventh Cause of Action, Plaintiffs allege that Moving Defendants are liable under the provisions of the California Civil Code Section 3372.  That section provides in pertinent part:

(a) Any person engaged in the business of advising others for compensation as to the advisability of purchasing, holding or selling property for investment and who represents himself or herself to be an expert with respect to investment decisions in such property ... shall be liable to any person to whom such advisory services are furnished for compensation and who is damaged by reason of such person's reliance upon such services

(b) For the purposes of this section, the following apply: (1) A person represents that such person is an "expert" within the meaning of this section if such person represents that he or she is a "financial planner," "financial adviser," "financial counselor," "financial consultant" or an "investment adviser," "investment counselor" or "investment consultant" or that such person renders "financial planning services," "financial advisory services," "financial counseling services," "financial consulting services" or "investment advisory services," "investment counseling services" or "investment consulting services" or makes substantially equivalent representations with respect to such person's business or qualifications.
(*Id.*)

There is *no* evidence to show (1) Moving Defendants made such representations; (2) Plaintiffs received investment advice from Moving Defendants regarding the subject transactions; or (3) that Moving Defendants received any compensation for providing such advice.  The undisputed evidence is directly contrary and limited to the following:

- Plaintiffs did not enter into an Advisory contract with Mr. Broda or Aspire RE.
  (Broda Decl., ¶ 19; Pizelo Decl., ¶¶13-15);

- Plaintiffs were not investment advisory clients of Broda or Aspire RE. (Broda Decl., ¶ 19);

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE, INC., AND ASPIRE INVESTMENTS, INC.

- Neither Broda, nor Aspire RE, received any commissions or compensation from Plaintiffs, for Plaintiffs' investments in WSE (Broda Decl., ¶ 35; Broda Depo., p. 38:3-5).

Given the uncontroverted evidence, Plaintiffs cannot, as a matter of law, prevail in a claim against Moving Defendants under Cal. Civ. Code § 3372.

### 3.   Eighth Cause of Action: Unfair and Deceptive Practices

California Business and Professions Code Section 17200, *et seq.* (also referred to as the unfair competition law or "UCL") prohibits unlawful competition, including an "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.)

### a.   *Plaintiffs' UCL Claim Is Precluded by Applicable Case Law*

Plaintiffs' UCL claim is precluded by the holding in *Bowen v. Ziasun Technologies, Inc.*, 116 Cal.App.4th 777, 788 (2004), in which a California Court of Appeal relied upon a Ninth Circuit decision,[1] to address the interplay of Federal securities violations and claims of unfair competition under the California UCL. *Id.*, at 787-788. The court held that the UCL does not reach unfair or fraudulent business practices in the sale of securities. *Id.*, at 787-89. Courts of at least 15 other jurisdictions have reached similar conclusions regarding similar statutes. *Id.*, at 787-88.

Other state courts have disagreed with the expansiveness of *Bowen*,[2] and in *In re Charles Schwab Corp. Securities Litigation*, 257 F.R.D. 534 (ND CA 2009) a Northern District court declined to follow *Bowen* in part, but only in cases in which a plaintiffs' claim is <u>not</u> predicated upon violations of the 1933 or 1934 Acts. *Id.*, at 553. Such claims are precisely the basis of Plaintiffs' entire case in the instant action, accordingly *Bowen* should be followed. (See FAC.) It is also worth noting that the *Bowen* decision is not novel, a number of other cases previously held that the UCL is not applicable to securities transactions and is preempted by federal law. See *Dietrich v. Bauer*, 76 F.Supp.2d 312, 351 (SD NY 1999); *Perera v. Chiron Corp.*, 1996 WL 251936 (ND CA 1996).

---

[1] *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388 (9th Cir. 1988) (holding that Hawaii's unfair competition law, which mirrors California's, did not apply to securities transactions).

[2] See *Overstock.com, Inc. v. Gradient Analytics, Inc.* 151 CA4th 688 (2007), holding that the UCL does reach securities transactions. *Id.*, at 716.

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE, INC., AND ASPIRE INVESTMENTS, INC.

1    Consequently, because Plaintiffs' entire case is premised upon claims of fraud or

2    misrepresentation in violations of federal and state securities laws, under the *Bowen* decision, Moving

3    Defendants are entitled to summary judgment on this Cause of Action.

    b.    *Plaintiffs' UCL Claim is Barred Because Plaintiffs Cannot Demonstrate Injury*

5    Private actions under the UCL are explicitly limited to individuals who have "suffered injury

6    in fact and lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code

7    §17204. The absence of any injury and the absence of any evidence to support a claim that Plaintiffs

8    suffered a monetary loss or loss of property are both fatal to any claim under the UCL. *Californians*

9    *for Disability Rights v. Mervyn's, LLC*, 29 Cal. 4th 223, 227 (Cal. 2006); see also, *Peterson v. Cellco*

10   *Partnership*, 164 Cal.App.4th 1583, 1591-92 (2008) (Plaintiffs did not meet injury requirement under

11   UCL ); *Medina v. Safe-Guard Products*, 78 Cal.Rptr.3d 672, 164 (2008) (Plaintiff did not suffer loss

12   of money or property because of insurer's unlicensed status and thus had no claim under the UCL).

13   As addressed more fully in Section III(D), Plaintiffs do not claim to have suffered any

14   damage. Indeed, any damage claim Plaintiffs have is entirely theoretical. Accordingly, Plaintiffs are

15   barred from asserting any claim under the UCL.

    c.    *Plaintiffs' UCL is Barred as to PWS Because Plaintiffs Have No Evidence of*
          *and Failed to Plead with Particularity Any Facts Demonstrating Fraud on the*
          *Part of PWS*

18   "A plaintiff alleging unfair business practices under [the UCL] must state with reasonable

19   particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of*

20   *California, Inc.*, 14 Cal.App. 612, 619 (1993), citing to 5 Witkin, Cal. Procedure (3d ed. 1985)

21   Pleading, § 728, p. 176.

22   In the instant case, the allegations in Plaintiffs' Eighth Cause of Action are not directed at

23   Moving Defendants, rather, the only defendant specifically mentioned in the Eighth Cause of Action

24   is co-defendant Amado. (See FAC p. 18:11-14.) As written, the FAC contains no allegations which

25   demonstrate that PWS, or any defendant other than Mr. Amado, in any way violated the UCL.

26   **4.    Eleventh Cause of Action: Breach of Fiduciary Duty**

27   Moving Defendants owed no fiduciary duty to Plaintiffs. In order to succeed in a cause of

28   action for breach of fiduciary duty, Plaintiffs must show the existence of a fiduciary relationship, its

1  breach, and damage caused by the breach.  *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,

2  158 Cal. App.4th 226, at 244 (Cal. Ct. App. 2007); CACI 4101.  The existence of a fiduciary

3  relationship cannot be based on conclusory statements by an alleged client or on objectively

4  unreasonable facts.  *Fox v. Pollack*, 181 Cal.App. 3d 954, 959 (1986).  Generally, in cases in which

5  California courts impose fiduciary duties on stockbrokers, it is in connection with the customer's

6  accounts held with the broker and generally include situations in which the brokers maintained

7  authority to make trades on the customer's account.  See, e.*g., Walsh v. Hooker & Fay,* 212

8  Cal.App.2d 450, 28 Cal.Rptr. 16 (1963); *Black v. Shearson, Hammill & Co.,* 266 Cal.App.2d 362, 72

9  Cal.Rptr. 157 (1968); *McMillan v. E.F. Hutton & Co. Inc.,* 399 F.Supp. 1153 (N.D.Cal.1975).

10  "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to

11  act on behalf and for the benefit of another, or must enter into a relationship which imposes that

12  undertaking as a matter of law."  *Committee on Children's Television, Inc. v. General Foods Corp.*,

13  35 Cal.3d 197, 221 (overruled on other grounds by *Branick v. Downey Sav. And Loan Ass'n*, 39 Cal.

14  4th 235 (2006)).

15      As previously discussed, Mr. Broda did not knowingly undertake anything regarding WSE; he

16  merely referred the Donahues to Messrs. Amado and Fish, after the Donahues asked Mr. Broda if he

17  was aware of any potential real estate investments through which they could make a 1031 Exchange.

18  (Broda Decl., ¶¶ 21-26, 29-34.)  Mr. Broda did not at any time enter into a relationship with Plaintiffs

19  regarding WSE.  Nor did Plaintiffs provide Mr. Broda with any compensation for referring them to

20  Amado and Fish.  (Broda Decl., ¶ 35.)

21      There is no evidence that Moving Defendants ever agreed to act on behalf of Plaintiffs in

22  connection with the transactions at issue.  (Pizelo Decl., 16-18.)  There is no evidence that Moving

23  Defendants ever controlled Plaintiffs' property, which is a key factor in a fiduciary relationship.

24  *Apollo Capital Fund, supra*, 158 Cal. App.4th at 246 ["In this case, the investors were not [the

25  broker's] customers and no fiduciary relationship could arise merely from the fact that [it] was a

26  licensed broker." *Id.*, at 245].  PWS was not in any way involved in the transactions for which

27  Plaintiffs claim.  (Pizelo Decl., ¶¶ 13, 17-18.)

28

NOTICE OF MOTION AND MOTION FOR SUMARY JUDGMENT OF DEFENDANTS ASPIRE REAL ESTATE, INC., AND ASPIRE INVESTMENTS, INC.

1      The evidence demonstrates that Mr. Broda (and Aspire RE. by association) did not owe a

2 fiduciary duty to Plaintiffs in connection with the transactions at issue: Mr. Broda was not licensed as

3 a registered investment advisor; he was not an investment advisor to Plaintiffs; and Plaintiffs did not

4 have an investment advisory agreement, or any agreement whatsoever, with Mr. Broda or Aspire RE

5 in connection to the transactions at issue.  (Broda Decl., ¶ 19.)

6      Even if the court somehow concludes that there was a fiduciary duty between Mr. Broda and

7 Plaintiffs in connection with the underlying transactions, there is no evidence in the record that Mr.

8 Broda breached that duty.  As previously established, Mr. Broda merely referred Plaintiffs to co-

9 defendants Amado and Fish after they expressed an interest in identifying real property through

10 which they could affect a 1031 exchange.  In doing so, Mr. Broda at all times acted in good faith and

11 treated Plaintiffs with due care.  In other words, Broda met his "duty."  No evidence put forth in this

12 matter establishes that Mr. Broda withheld any information from, or in any manner misled, Plaintiffs.

13      As a result, Plaintiffs' claim for breach of fiduciary duty lacks factual and legal support; PWS

14 is entitled to summary judgment as a matter of law.

## IV.   CONCLUSION

16      For the forgoing reasons, defendants Edward Broda and Aspire Real Estate, Inc., request that

17 the Court grant their motion for summary judgment as to all of the claims asserted in Plaintiffs' First

18 Amended Complaint.

19                       Respectfully submitted,

20 DATED:  December 23, 2010         DILLINGHAM & MURPHY, LLP
                                 DENNIS J. KELLY

21                                 HSIAO C. (MARK) MAO
                                 PATRICK J. SUTER

22                                 BROOKE S. PURCELL

23

24 By:       **/s/ Dennis J. Kelly**
                                 Attorneys for Defendants

25                                 PACIFIC WEST SECURITIES, INC.,
                                 ASPIRE REAL ESTATE, INC., ASPIRE

26                                 INVESTMENTS, INC., and EDWARD S.
                                 BRODA

27

28