1   **DILLINGHAM & MURPHY, LLP**
    DENNIS J. KELLY (SBN 191414)
2   HSIAO C. (MARK) MAO (SBN 236165)
    PATRICK J. SUTER (SBN 242494)
3   BROOKE S. PURCELL (SBN 260058)
    225 Bush Street, 6th Floor
4   San Francisco, California 94104-4207
    Telephone:    (415) 397-2700
5   Facsimile:    (415) 397-3300
    djk@dillinghammurphy.com
6   mcm@dillinghammurphy.com
    pjs@dillinghammurphy.com
7   bsp@dillinghammurphy.com

8   Attorneys for Defendants
    PACIFIC WEST SECURITIES, INC.,
9   ASPIRE REAL ESTATE, INC., ASPIRE
    INVESTMENTS, INC., and EDWARD S. BRODA

10

11                  IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13   SAN FRANCISCO RESIDENCE CLUB, INC.,          Case No. 3:09-CV-02054-RS
     DONAHUE O'SHEA, LLC, THOMAS P.
14   O'SHEA, individually and as TRUSTEE FOR      DEFENDANTS' PACIFIC WEST
     THE TRUST OF THOMAS P. AND ANNE              SECURITIES, INC. AND ASPIRE
15   O'SHEA,                                      INVESTMENTS, INC. MEMORANDUM
                                                  OF POINTS AND AUTHORITIES IN
16                  Plaintiffs,                   SUPPORT OF MOTION FOR
                                                  SUMMARY JUDGMENT
17   v.
                                                  Date:   January 27, 2011
18   HENRY A. AMADO, ABACUS FINANCIAL             Time:   1:30 p.m.
     GROUP, LLC, WHITE SANDS ESTATES,            Dept.   Courtroom 3, 17th Floor
19   LLC, EDWARD S. BRODA, ASPIRE REAL            Judge:  Richard Seeborg
     ESTATE, INC., ASPIRE INVESTMENTS,
20   INC., PACIFIC WEST SECURITIES, INC.,
     GREGORY FISH and G.D. FISH &
21   ASSOCIATES, and DOES 1 through 100,
     inclusive,
22
                    Defendants.
23

24

25

26

27

28

1

### TABLE OF CONTENTS

2

Page

3   I.   INTRODUCTION ...................................................................................................1

4   II.  FACTUAL BACKGROUND ...............................................................................2

5        A.   Background regarding the Parties ..............................................................2

6        B.   Mr. Broda Was At All Times An Independent Contractor of PWS .......3

7        C.   Plaintiffs' Prior Dealings With Mr. Broda, PWS, and Aspire Investments ...........3

8        D.   Plaintiffs' Purchase and Attempted Development of the Real Property At Issue ...4

8   III. ARGUMENT ........................................................................................................7

9        A.   Applicable Legal Standards.......................................................................7

10       B.   Moving Defendants Are Entitled to Summary Judgment For All Claims Against Them Because No "Security" or Investment Existed At the Time of the "Sale"....8

11       C.   Moving Defendants Are Entitled to Summary Judgment for All Claims Because Neither PWS, Aspire, Nor Mr. Broda Violated Federal Securities Laws In Connection With Plaintiffs' Investments ................8

12            1.   The Investments at Issue Were Not Securities .............................8

13            2.   Assuming, *Arguendo*, the Investments Were Securities, They Were Private Offerings Exempt from Registration, Thereby Precluding Plaintiffs' 12(a)(1) Claim ........................................10

14            3.   Neither Mr. Broda nor Either Moving Defendant Were Statutory "Sellers"........................................12

16       D.   PWS is Entitled to Summary Judgment for All Claims Against It Because As a Principal/Broker-Dealer It Cannot Be Liable for the Alleged Acts of An Independent Contractor Acting Without Express Or Apparent Authority ............12

18            1.   The Doctrine of Respondeat Superior is Inapplicable to Plaintiffs' Claims ......................................12

20                 a.   Broker-Dealers Cannot Be Held Vicariously Liable for the Actions of Independent Contractors which Are Outside of the Terms of Their Agency.......................................12

22                 b.   Broda Had No Actual Authority Regarding Plaintiffs' Investments in WSE.......................................14

24                 c.   There Are No Facts to Support a Claim that Mr. Broda Had ImpliedAuthority ........................................15

26                 d.   There is No Evidence to Support Ostensible Authority ....................16

27                      i.   Undisputed Evidence Shows that PWS Made No Representations Regarding WSE.......................................16

28                      ii.  The Evidence Precludes a Finding of Justifiable Reliance................17

E.   Moving Defendants Are Entitled to Summary Judgment Because Plaintiffs Have Failed to Establish, With Any Certainty, That They Have or Will Suffer Any Damages As A Result of Any of Their Alleged Claims ....................................... 17

F.   In the Alternative, Moving Defendants Are Entitled to Partial Summary Judgment of Plaintiffs' Claims ............................................................................................. 19

     1.   Third Cause of Action for Violation of Section 12(a)(2) of the Securities Act of 1933 and Plaintiffs' Claim of Violation of Section 12(a)(1) of the Act ...................................................................... 19

     2.   Seventh Cause of Action for Violation of Cal. Civ. Code § 3372 (Investment Advisor Liability) ................................................... 20

     3.   Eighth Cause of Action: Unfair and Deceptive Practices ........................ 21

          a.   Plaintiffs' UCL Claim Is Precluded by Applicable Case Law ........... 21

          b.   Plaintiffs' UCL Claim is Barred Because Plaintiffs Cannot Demonstrate Injury ............................................................................... 22

          c.   Plaintiffs' UCL Claim Is Barred as to Moving Defendants Because Plaintiffs Have No Evidence of and Failed to Plead with Particularity Any Facts Demonstrating Fraud on the Part of Moving Defendants ........................................................................... 22

     4.   Eleventh Cause of Action: Breach of Fiduciary Duty .............................. 23

IV. CONCLUSION .................................................................................................. 25

TABLE OF AUTHORITIES

Page(s)

*Cases*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ...................................................... 7

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App.4th 226, at 244 (Cal. Ct. App. 2007)................................................................................................................................ 23

*Asplund v. Selected Investments In Financial Equities, Inc.*, 86 Cal. App. 4th 26, 29, (2000) 2, 13, 15

*Black v. Shearson, Hammill & Co.*, 266 Cal.App.2d 362, 72 Cal.Rptr. 157 (1968).................... 23

*Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)....................................... 7

*Bowen v. Ziasun Technologies, Inc.*, 116 Cal.App.4th 777, 788 (2004) ..................................... 21

*Branick v. Downey Sav. And Loan Ass'n*, 39 Cal. 4th 235 (2006)............................................... 24

*Californians for Disability Rights v. Mervyn's, LLC*, 29 Cal. 4th 223, 227 (Cal. 2006) ............. 22

*Caminetti v. Manierre*, 23 Cal. 2d 94 (1943) ................................................................................ 18

*Columbia Outfitting Co. v. B.H. Freeman*, 36 Cal. 2d 216, at 219 (Cal. 1950)........................... 15

*Commercial Union Assur. Co. v. Pac. Gas & Elec. Co.*, 220 Cal. 515 (1934) ............................ 18

*Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 221 ............. 24

*Cover v. Cushing Capital Corp*, 497 A.2d 249, 252 (Pa. 1985) .................................................. 17

*Deutsch Energy Co. v. Mazur*, 813 F.2d 1567 (9th Cir. 1987) ............................................... 9, 10

*Dietrich v. Bauer*, 76 F.Supp.2d 312, 351 (SD NY 1999) .......................................................... 22

*Ernst v. Searle*, 218 Cal. 233, 237 (Cal. 1933).......................................................................... 16

*Fanelli v. Cypress Capital Corp.*, 1994 WL 725427 (N.D. CA) ............................... 13, 14, 15, 17

*Florida Asset Financing Corp. v. Bortin Petrini & Conron*, 11 Fed. Appx. 907, 909 (9th Cir. 2001)............................................................................................................................................ 2

*Fox v. Pollack*, 181 Cal.App. 3d 954, 959 (1986)........................................................................ 23

*Garfield v. Strain*, 320 F.2d 116 (10th Cir., 1954) ...................................................................... 10

*Green Wood Indus. Co. v. Forceman Int'l Dev. Group*, 156 Cal.App.4th 766 (Cal. Ct. App. 2007) ........................................................................................................................................ 18, 19

*Griffith Co. v. San Diego College for Women*, 45 Cal. 2d 501 (1955).......................................... 18

*Hauser v. Farrell*, 14 F.3d 1338, 1341-1342 (1994) .................................................. 2

*Hill v. Citizens Nat. Trust & Savings Bank of Los Angeles*, 9 Cal.2d 172, 175 (1937) ............... 16

*Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 451 (Cal. 1945) ...................................... 16

*Hollinger v. Titan*, (9th Cir. 1990).914 F.2d 1564, 1574 ......................................... 12

*In re Charles Schwab Corp. Securities Litigation*, 257 F.R.D. 534 (ND CA 2009) ..................... 22

*Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ................................... 7

*Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ............................................. 7

*Khoury v. Maly's of California, Inc.*, 14 Cal.App. 612, 619 (1993) ................................ 23

*Leavens v. Pinkham & McKevitt*, 164 Cal. 242 (Cal. 1912) ......................................... 16

*Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) .......................... 7

*McMillan v. E.F. Hutton & Co. Inc.,* 399 F.Supp. 1153 (N.D.Cal.1975.) ............................ 23

*Medina v. Safe-Guard Products*, 78 Cal.Rptr.3d 672, 164 (2008) ................................... 22

*Overstock.com, Inc. v. Gradient Analytics, Inc.* 151 CA4th 688 (2007) ............................. 22

*Perera v. Chiron Corp.*, 1996 WL 251936 (ND CA 1996) ............................................. 22

*Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1591-92 (2008) ............................. 22

*Pinter v. Dahl*, 486 U.S. 622 (1988) ............................................................. 12

*Ralston Purina*, 346 U.S. 119, 125 (1953) ........................................................ 10

*S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1090-91 (9th Cir. 2010) ................. 10

*SEC v. Murphy*, 626 F.2d 633, 640-641 ............................................................ 9

*SEC v. WH Howey Co.*, 328 U.S. 293 (1946) ........................................................ 8

*Seneris v. Haas*, 45 Cal.2d 811, 830 (1955) ...................................................... 14

*South Sacramento Drayage Co. v. Campbell Soup Co.*, 220 Cal. App. 2d 851, 856-34 (Cal. Ct. App. 1963) ....................................................................................... 16

*Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388 (9th Cir. 1988) ........................... 21

*Vicioso v. Waston*, 325 F.Supp. 1071, 1078 (C.D. Cal. 1971) .................................. 10, 11

*Walsh v. Hooker & Fay,* 212 Cal.App.2d 450, 28 Cal.Rptr. 16 (1963) ............................... 23

**Statutes**

Cal. Bus. & Prof. Code §17200 .................................................................... 21

Cal. Bus. & Prof. Code §17204 ................................................................... 22

Cal. Civ. Code § 2317 ................................................................................ 16

Cal. Civ. Code § 3372 ......................................................................... 1, 8, 20, 21

*15 U.S.C. § 77d(2)*................................................................................ *10*

15 U.S.C. § 77l ...................................................................... 2, 12, 19

Internal Revenue Code Section 1031 ...................................................... 4, 6, 11

*Rules*

Fed. R. Civ. P. 56(a) ................................................................................. 7

*Treatises*

1 *Witkin, Calif.Law (9th ed.)* ................................................................ 14

3 Witkin, *Summary of California Law* ...................................................... 16

5 Witkin, Cal. Procedure (3d ed. 1985)...................................................... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants Pacific West Securities, Inc. ("PWS") and Aspire Investments, Inc. ("Aspire") (collectively, "Moving Defendants") move for summary judgment as to all claims against them, or, in the alternative, for partial summary judgment as to each claim.

Plaintiffs San Francisco Residence Club, Inc., Donahue O'Shea, LLC, Thomas P. O'Shea, and the Trust of Thomas P. and Anne O'Shea (collectively, "Plaintiffs") purchased and attempted to develop real property located in Kona, Hawaii.  The land development project is commonly referred to as White Sands Estates ("WSE").  Plaintiffs were introduced to the individuals organizing the purchase and development of WSE, co-defendants Henry Amando and Gregory Fish, by co-defendant Edward S. Broda, a former registered representative and independent contractor of PWS and the founder and President of Aspire and co-defendant Aspire Real Estate, Inc.

Plaintiffs sued all defendants to the action claiming that Plaintiffs' investment in WSE constituted an unregistered security which they purchased through the defendants.  However, at the time Mr. Broda referred Plaintiffs to co-defendants Amado and Fish, there was no fully-formed investment vehicle and the land had not been purchased.  Accordingly, there was no security to sell.

Neither Moving Defendant had any involvement in or affiliation with WSE.  PWS was not aware of the project at the time of Plaintiffs investment.  Neither Moving Defendant authorized or approved Plaintiffs' investment, nor did either economically benefit from the project.

Mr. Broda was never an employee of PWS; throughout the course of his association with PWS, he was an independent contractor.  The only securities products Mr. Broda was authorized to sell were those that, unlike the investment in WSE, had been approved by PWS.  Mr. Broda referred Plaintiffs to Amado and Fish without PWS' knowledge or approval and was therefore acting outside the scope of his authority as an agent and/or registered representative of PWS.

Despite these facts, Plaintiffs asserted claims against Moving Defendants for: (1) Violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2); (2) Violation of Cal. Civ. Code § 3372; (3) Unfair and Deceptive Practices in Violation of Cal. Bus. & Prof. Code; and (4) Breach of Fiduciary Duty.  Although not specifically pled as a separate cause of action, the Court has

1  interpreted Plaintiffs' FAC to also include a claim for a violation of Section 12(a)(1) of the Securities

2  Act of 1933, 15 U.S.C. § 77l(a)(1).  As alleged against Moving Defendants, all of Plaintiffs' claims

3  are premised on a theory of vicarious liability arising from Mr. Broda's alleged misconduct.

4      Based upon the undisputed facts of this case, PWS cannot as a matter of law be held liable for

5  Plaintiffs' alleged damages arising from their investment in the White Sands Estates property.

6  *Hauser v. Farrell*, 14 F.3d 1338, 1341-1342 (1994); *Asplund v. Selected Investments In Financial*

7  *Equities, Inc.*, 86 Cal. App. 4th 26, 29, (2000); *Florida Asset Financing Corp. v. Bortin Petrini &*

8  *Conron*, 11 Fed. Appx. 907, 909 (9th Cir. 2001).

9      What is striking about this case is the utter lack of involvement of Moving Defendants in the

10  transactions at issue in this action.  Plaintiffs' First Amended Complaint ("FAC") is devoid of

11  allegations specific to Moving Defendants.  Plaintiffs' attempt to pin any liability on Moving

12  Defendants is unsupportable by the facts and the law.  For the reasons stated below, Moving

13  Defendants are entitled to summary judgment as to each of the claims alleged against them.

14  Alternatively, Moving Defendants are entitled to partial summary judgment as to each claim.

15              **II.     FACTUAL BACKGROUND**

16  **A.      Background regarding the Parties**

17      The San Francisco Residence Club, Inc., Donahue, O'Shea, LLC ("DOS"), and the Trust of

18  Thomas P. and Anne O'Shea (the "Plaintiff entities") were all created and controlled by members of

19  the Donahue and O'Shea families.  (FAC p. 2:10-22.)  Over the last five decades, the Plaintiff entities

20  and the individual members and owners of the entities have made millions of dollars through

21  numerous real estate developments and investments.

22      Plaintiff Thomas P. O'Shea is married to Anne (Donahue) O'Shea and is suing on behalf of

23  the Trust of Thomas P. and Anne O'Shea.

24      Defendant PWS is a family-founded independent broker-dealer based in Renton, Washington.

25  (Declaration of Tony Pizelo ("Pizelo Decl."), ¶ 2.)   PWS is registered with both the Securities and

26  Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA").

27  (Pizelo Decl., at ¶ 2.)   PWS maintained an independent contractor arrangement with co-defendant

28  Edward S. Broda, whereby Mr. Broda acted as a registered representative of PWS.  (Pizelo Decl., at

1  ¶¶ 3, 4; Exhibit ("Exh.") 1 to Pizelo Decl.; Broda Decl., ¶ 3.)

2       Defendant Aspire is a Danville, California company  founded by Mr. Broda in 2006 to market

3  and sell securitized tenant in common ("TIC") interests to investors.  (Deposition of Edward S. Broda

4  ("Broda Depo.") at pp. 8:2-10, 12:10-13.)  Aspire sells these securitized TICs through its affiliation

5  with PWS.  (Broda Depo., at p. 10:8-20; Broda Decl., ¶ 9.)

6       Defendant Aspire Real Estate was a corporate entity, founded by Mr. Broda, to engage in real

7  estate transactions.  (Broda Depo., at p.16:11-20; Broda Decl., ¶ 10 .)   That entity has since been

8  dissolved.  (Broda Depo., at p. 15:5-9; Broda Decl., ¶ 10.)

9  **B.**    **Mr. Broda Was At All Times An Independent Contractor of PWS**

10       Mr. Broda began his affiliation with PWS when he became an independent contractor

11  registered representative of the company.  (Broda Decl., ¶ 2-3; Pizelo Decl., ¶ 3; Exh. 1 to Pizelo

12  Decl.)  That relationship was governed by a number of agreements, policies and procedures,

13  including: the "Pacific West Securities, Inc. Registered Representative Independent Contractor

14  Agreement" (the "Independent Contractor Agreement"); the "Outside Business Activity Real Estate

15  Agent or Broker" (the "OBA Agreement"); and PWS' policies and procedures as outlined in PWS'

16  Registered Representative Manual ("Manual") (Broda Decl., ¶¶ 3- 8; Pizelo Delc., ¶¶ 4-11 and Exhs.

17  1 through 4 attached thereto.)

18  **C.**    **Plaintiffs' Prior Dealings With Mr. Broda, PWS, and Aspire Investments**

19       Prior to the transactions at issue, members of both the Donahue and O'Shea families opened

20  accounts with PWS, through Mr. Broda.  (Pizelo Decl., ¶ 12 and Exh. 5 attached thereto; Broda

21  Decl., ¶¶ 14-15.)  In fact, prior to Mr. Broda's affiliation with PWS, both families maintained

22  accounts, through Mr. Broda, with his prior broker-dealer, Sigma Financial.  (Broda Decl., ¶ 14.)

23  Through Mr. Broda, Members of both families invested in securitized tenant in common ("TIC")

24  investments.  (Broda Decl., ¶¶ 14-15.)

25       At no point did any of the Plaintiffs, or the individual members of the Donahue and O'Shea

26  families, enter into investment advisory agreements with Mr. Broda, PWS, Aspire Investments, or

27  Aspire Real Estate.  (Broda Decl., ¶ 19; Pizelo Decl., ¶ 15.)

28

**D.**     **Plaintiffs' Purchase and Attempted Development of the Real Property At Issue**

In 2007, the Donahues and O'Sheas (hereinafter referred to as the "Donahues") wanted to avoid the tax implications of millions of dollars in capital gains on recently-sold real property and contacted Mr. Broda regarding possible opportunities to affect a "like-kind" exchange pursuant to Section 1031 of the Internal Revenue Code (an "IRC 1031 exchange").  (Broda Decl., ¶¶ 21.)

At the time, Mr. Broda attempted to offer the Plaintiffs securitized TICs through PWS, but the Donahues were not interested in such investments.  (Broda Decl., ¶¶ 22-24.)  Rather, they were looking for investments in real estate, not securities, and Mr. Broda referred them to Messrs. Amado and Fish.  (Deposition of Henry Amado ("Amado Depo."), p. 163:9-17, attached as Exh. F to Purcell Decl.; Broda Decl., ¶ 24.)

Mr. Broda did not notify or request authority from PWS to refer the Donahues to Messrs. Amado and Fish.  (Broda Decl., ¶ 29; Pizelo Decl., ¶ 16.)  After the referral, the Donahues, with the assistance of their own counsel, dealt directly with Amado and Fish – without much, if any, involvement from Mr. Broda.  (Amado Depo., p. 173:9-14; Broda Decl., ¶ 26.)

Mr. Broda told the Donahues that he knew Messrs. Amado and Fish were attempting to purchase land and build condominiums in Kona, Hawaii.  (Broda Decl., ¶ 24.)  At the time of the referral, Amado and Fish were looking to acquire a 42-acre parcel of real property (hereinafter the "Property"), for the purpose of building condominiums (hereinafter the "Project").  However, Amado and Fish were still in the process of trying to secure financing and had yet to acquire the Property.  (See Purcell Decl., Exh. A, AMK587 00286 (on settlement date); Broda Decl., ¶¶ 24, 30.)

After independently assessing the Property and discussing the matter with their own attorneys, the Donahues saw the Project as a business opportunity and a tax-saving vehicle.  The Donahues immediately involved their real estate and tax attorney, Jeffrey Weiss, to make sure that their investment would be characterized as an investment in real estate, and not securities.  (Amado Depo., pp. 164:18-25; 165:1-15.)  Weiss was concurrently implementing other IRC § 1031 exchanges for several of the Plaintiffs, and provided tax advice and counseling for members of the families.  (Amado Depo., pp. 145:8-25; 146: 1; 164:23-25; 165:1-15.)

1    Weiss told Messrs. Amado and Fish that it was critical for the Donahues that the funds they

2    provided be reinvested into other "like-kind" real estate, as opposed to securities.  (Amado Depo., pp.

3    67:21-25; 68:1-17; 91:3-9.)  The Donahues and Weiss were "adamant" that their investment would be

4    real estate, and not securities.  (Amado Depo., p. 165: 7-15.)  Weiss set up the investment structure

5    for the Donahues, and made sure that they would retain control of the finances and construction

6    process for the Project.  (Amado Depo., pp. 145:8-25; 146:1; 82:22-25; 83:1-17.)

7        In addition, the Donahues also hired Hawaiian attorney William Deeley to assist on the

8    Project.  (Purcell Decl., Exhs. B and C.)  With the assistance of both Weiss and Deeley, the

9    Donahues, Amado, and Fish managed to secure funding for the acquisition of the Property from

10   Kennedy Funding Inc. ("Kennedy"), in November 2007.  (Purcell Decl., Exh. B and C.)  Plaintiff

11   SFRC was a co-borrower for the loan.  (Purcell Decl., Exh. D.)

12       On or about November 13, 2007, escrow closed on the Property.  (Purcell Decl., Exh. A.)  At

13   that time, the Jeff Culver Revocable Trust was the only other owner of the Project in addition to the

14   holding entities of the Donahues, Amado, and Fish.  (Purcell Decl., Exh. E.)

15       The Donahues have been active investors who directly managed and developed the Project.

16   In crafting the project, the Donahues asked Weiss to make sure that they: (1) retained the right to

17   control how the Kennedy loan proceeds would be used; (2) would be able to control the construction

18   process; (3) would retain an "absolute veto" in the whole Project; and (4) retained control over the

19   hiring of engineers, architects, and other professionals working on the Project.  (Amado Depo., pp.

20   81:7-25; 82:1-25; 83:1-17; 87:5-25; 88:1-7.)  Plaintiffs also identified themselves as "developers" of

21   the Project in the building permit they applied for with the State of Hawaii.  (Amado Depo., pp.

22   81:19-21; 87:3-17.)

23       Plaintiffs did not make their investments in the Property after they received any "offering

24   documents," as alleged in the FAC, but rather with the advice of their lawyer, Mr. Weiss.  In fact,

25   Plaintiffs' counsel, Mr. Weiss, participated in the preparation of the actual offering documents.

26   (Amado Depo., pp. 163:18-25; 164:1-2.)  As the "Summary of Offering" (Amado Depo. Exh. 4) and

27   "Subscription Booklet" (Amado Depo. Exh. 8) show, these documents were all written *after*

28   Plaintiffs acquired the Property and *after* Plaintiffs began developing the Project.  (Amado Depo.,

1   Exh. 4, EB00311 [discussing the acquisition date of the Property]; Amado Depo., Exh. 8, EB00289-

2   00291 [all dated 2008]; see also Amado Depo., pp. 64:18-25; 65:1-7; 163:18-25; 164:1-2.)

3        After Mr. Weiss prepared the Subscription Booklet and Summary of Offering, he advised co-

4   defendants Amado and Fish that the Project did not need to be registered with the SEC, and that the

5   parties should revisit the issue only if the Plaintiffs' investments failed to qualify as an IRC § 1031

6   exchange.  (Amado Depo., pp. 72:18-25; 73:1-25; 74:1-2.)  Because the Donahues wanted their

7   investment to qualify as an IRC § 1031 exchange, they were "adamant with Mr. Weiss that the

8   transaction would qualify under Section 1031 and were real estate transactions and would not be

9   deemed a security and, therefore, violate the like-kind rules."  (Amado Depo., p. 165:11-15.)

10        Motivated to seek additional owners due to their own liquidity problems, in early 2008, the

11   Donahues discussed with Amado trying to obtain additional owners for the Project.  (Amado Depo.,

12   pp. 64:18-25; 65:1-7; 72:18-25; 73:1-18.)  The Donahues also asked if Mr. Broda would assist in this

13   effort.  (Broda Decl., ¶ 38.)  Weiss was involved in discussing whether the parties needed to prepare a

14   "subscription booklet" and whether the Project needed to be registered with the SEC.  (Amado Depo.,

15   pp. 64:18-25; 65:1-7; 72:18-25; 73:1-10.)

16        PWS did not receive any commission or any payment of any kind in connection with the

17   WSE development project.  (Broda Depo., pp. 25:13-15; 26:15-18; Pizelo Decl., ¶ 19; Broda Decl., ¶

18   35.)  No manager or employee of PWS was even aware of Plaintiffs' investments in White Sands

19   until this case was filed.  (Pizelo Decl., ¶ 16.)

20        As of the filing of this Motion, the Plaintiffs have not suffered any damages related to their

21   investments at issue: their purchase of real property in Kona, Hawaii, and the attempted development

22   of that land.  While a foreclosure action is currently pending in Hawaii (see *Kennedy Funding, Inc. v.*

23   *White Sands Estates, LLC, et al.*, Case No. 09-00191-JMS-BMK, that case has not concluded and the

24   real property purchased by Plaintiffs has not been foreclosed upon.  (Request for Judicial Notice

25   ("RJN").)  Unless and until the property is foreclosed upon or some other event occurs to cause the

26   Plaintiffs to sustain a loss, Plaintiffs' claims to damages is uncertain and purely theoretical.

27   ///

28   ///

# III.   ARGUMENT

## A.   Applicable Legal Standards

Summary judgment shall be granted when the evidence demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id.*, at 248.

A party opposing a motion for summary judgment bears the burden of establishing the existence of a genuine dispute of material fact.  *Anderson*, *supra*, 477 U.S. at 248-49.  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Mere speculation or inference by the non-moving party cannot create a genuine issue of material fact.  Moreover, a mere disagreement about a material issue of fact does not preclude summary judgment.  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990).

When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).  Thus, the essential question here is whether a reasonable fact finder could return a verdict for Plaintiffs against Moving Defendants, or whether the moving party, at trial, would be entitled to judgment as a matter of law.  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Moving Defendants move for summary judgment as to all claims and causes of action alleged against it because: (1) No security or investment existed at the time Mr. Broda referred Plaintiffs to Amado and Fish; and (2) Plaintiffs' purchase and attempted development of the Hawaii Property was not a security under federal securities laws, or, if it was, it was a properly exempt private placement and neither PWS or Mr. Broda were statutory sellers.  PWS separately moves for summary judgment as to all claims against it because, as a broker-dealer, it cannot be held vicariously liable for any alleged acts of an independent contractor broker dealer who did not act with express or implied authority of PWS.

In the alternative, Moving Defendants move for partial summary judgment as to the five claims alleged against them: (1) Plaintiffs' Third Cause of Action for violation of Section 12(a)(2) of the Securities Act of 1933; (2) Plaintiffs' Seventh Cause of Action for violation of Cal. Civ. Code Section 3372; (3) Plaintiffs' Eighth Cause of Action for unfair and deceptive practices in violation of Cal. Bus. & Prof. Code; (4) Plaintiffs' Eleventh Cause of Action for Breach of Fiduciary Duty; and (5) Plaintiffs' claim for violation of Section 12(a)(1) of the Securities Act of 1933.

**B.** **Moving Defendants Are Entitled to Summary Judgment For All Claims Against Them Because No "Security" or Investment Existed At the Time of the "Sale"**

Plaintiffs' entire case against Moving Defendants is largely based upon Plaintiffs claim that Mr. Broda and PWS marketed and sold securities to Plaintiffs in violation of Sections 12(a)(2) and 12(a)(1) of the Securities Act of 1933 as well as California law.  (FAC ¶¶ 22, 80-84; Docket No. 94.) These claims are premised on a theory of vicarious liability stemming from the alleged actions of Mr. Broda: his referral of the Donahues to co-defendants Amado and Fish.  (FAC ¶ 105.)

At the time Mr. Broda referred the Donahues to Messrs. Amado and Fish, the Project had not yet taken shape (Broda Decl., ¶ 24, 30) and Mr. Broda informed the Donahues that he did not know the details of the Project.  (Broda Decl., ¶ 25.)  Accordingly, the Project <u>could not have been a security at the time Mr. Broda referred Plaintiffs to Amado and Fish because the structure and type of investment had not yet been determined of the purported "sale</u>."  (Amado Depo., p. 173:9-14.)  It was only after the Plaintiffs became involved in the Project that they, together with their attorneys, structured the investment.  (Amado Depo., pp. 82:22-25; 83:1-17; 165:7-15; 145:8-25; 146:1; and Broda Decl., ¶ 27.)

**C.** **Moving Defendants Are Entitled to Summary Judgment for All Claims Because Neither PWS, Aspire, Nor Mr. Broda Violated Federal Securities Laws In Connection With Plaintiffs' Investments**

**1.** **The Investments at Issue Were Not Securities**

The longstanding test for whether a particular investment constitutes an "investment contract," and therefore a security, was outlined by the Supreme Court in *SEC v. WH Howey Co.*, 328 U.S. 293 (1946).  The proper inquiry is: whether an individual: (1) Invests money; (2) In a common enterprise; (3) For which the investor expects profits; and (4) The profits are derived solely from the

1   efforts of others.  *Id.*, at 301; see also *SEC v. Murphy*, 626 F.2d 633, 640-641 [an investment contract

2   "involves investment in a common enterprise with profits to come solely from the efforts of others."].

3        Courts have found that where the investor's efforts are significant in the success of the

4   enterprise, and the investors are highly sophisticated business people, an investment contract (and

5   therefore a security) will not exist.  For example, in *Deutsch Energy Co. v. Mazur*, 813 F.2d 1567

6   (9th Cir. 1987) the court found that the investments of a knowledgeable and sophisticated family of

7   investors, who invested in drilling operations and had opportunities to control the drilling operations,

8   were not securities.  *Id.*, at 1570.  In that case, the court held that the transaction "did not constitute an

9   "investment contract," and therefore a "security," because, as possessors of significant managerial

10  powers and a high degree of business acumen, the plaintiffs "could not rightfully expect their profits

11  to be derived solely from the efforts of individuals other than themselves."  *Id*.

12       In the instant case, indisputable evidence demonstrates that Plaintiffs actively managed and

13  developed the Property along with Amado and Fish, just as the plaintiffs did in *Deutsch*:

14  •    SFRC co-signed as a borrower and made numerous representations to Kennedy to

15       induce the loan for the Property.  (See Purcell Decl., Exh. D.)  Plaintiffs' attorneys

16       Weiss and Deeley, acted as Plaintiffs' agents and spent considerable efforts on

17       conducting due diligence on the Kennedy loan.  (Purcell Decl., Exh. B and C.)

18  •    Plaintiffs and their attorneys formed and structured the Project.  (Amado Depo., pp.

19       163:18-25; 164:1-2; Purcell Decl., Exh. B and C.)

20  •    Plaintiffs themselves applied for building permits as the "developer."  (Amado Depo.,

21       pp. 81:19-21; 87:3-17.)  Plaintiffs also retained control over the hiring and management

22       of engineers, architects, and other professionals working on the Project.  (Amado Depo.,

23       p. 87:5-25; 88:1-7.)

24  •    Plaintiffs actively participated in the solicitation of additional owners for the Project.

25       (Amado Depo., pp. 162:24-25; 163:1-8; 72:18-25; 73:1-18; and Broda Decl., ¶38.)

26  •    Plaintiffs and Weiss assisted in writing the "Summary of Offering" and "Subscription

27       Booklet."  (Amado Depo., pp. 163:18-25; 164:1-2.)

28

1   Plaintiffs knew at all times that the success or failure of the Project was directly dependent on

2   their efforts.  Instead of relying on the efforts of Amado and Fish, Plaintiffs aggressively sought to

3   control the Project using their own resources and counsel.

4   Where Plaintiffs expended considerable efforts and knew that the success of the Project

5   depended on their efforts, their investment was not a "security."  *Deutsch Energy*, 813 F.2d at 1570.

6   Thus, Plaintiffs' §§ 12(a)(1) and (a)(2) claims must fail because, as a matter of law, Plaintiffs'

7   purchase of the White Sands property was not a security.

8   **2.    Assuming, A*rguendo*, the Investments Were Securities, They Were Private
            Offerings Exempt from Registration, Thereby Precluding Plaintiffs' 12(a)(1)**

9   **Claim**

10  Section 4(2) of the Securities Act of 1933 exempts certain "private offerings" from

11  registration (15 U.S.C. § 77d(2).)  "[T]he applicability of [Section 4(2)] should turn on whether the

12  particular class of persons affected need the protection of the [Securities] Act.  An offering to those

13  who are shown to be able to fend for themselves is a transaction 'not involving any public offering.' "

14  *Ralston Purina*, 346 U.S. 119, 125 (1953).  In other words, "a limited distribution to highly

15  sophisticated investors, rather than a general distribution to the public, is not a public offering."

16  *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1090-91 (9th Cir. 2010)

17  Whether or not an offering is public is a factual inquiry which requires an analysis of factors,

18  including: "the relationship between the purchaser and the seller, and the nature, scope, size, and

19  manner of the offering."  *Vicioso v. Waston*, 325 F.Supp. 1071, 1078 (C.D. Cal. 1971).  "Direct

20  negotiations [by investors] are more likely to be non-public than are those transacted through the

21  machinery of public distribution such as the national exchanges.  The fact that the investor rather than

22  the seller initiates the transaction indicates that a private offering is involved."  *Id.*, citing *Garfield v.*

23  *Strain*, 320 F.2d 116 (10th Cir., 1954).

24  Here, Plaintiffs allege no facts and cannot put forth any evidence that their investment in

25  WSE was not a private offering.  Undisputed facts demonstrate that, if a security, the investment

26  constituted a private offering:

27  •    Plaintiffs had a personal relationship with Mr. Broda for a number of years; he referred

28       them to Amado and Fish because Plaintiffs were specifically seeking real estate, not

1    securities.  (Amado Depo., p. 165:7-15; Broda Decl., ¶¶ 14-24.)

2    •    Plaintiffs were assisted at all times by their own counsel who structured and put

3        together the Project.  (Amado Depo., pp. 163:18-25; 164:1-2; Broda Decl., ¶¶ 27, 32.)

4    •    The nature of the business joint venture was to develop real estate, not to sell securities.

5        In fact, Plaintiffs' counsel made sure that it was clear from the operating agreements

6        that Plaintiffs were engaging in real estate development.  (Amado Depo., ¶ 163:18-

7        164:2; Broda Decl., ¶¶ 24, 27.)

8    •    The scope and size of the "offering" was small, as there were only four sets of parties:

9        Plaintiffs, Amado, Fish, and Jeff Culver.  (Purcell Decl., Exhs. D and E.)

10   •    Plaintiffs intentionally sought IRC § 1031 exchanges, and they were not "solicited."

11       (Amado Depo., ¶ 163:9-17, Broda Decl., ¶¶ 21-24.)

12       In *Vicioso,* the court held that the investment was a "joint venture," exempt from registration.

13   *Vicioso*, *supra*, at 1078.  The plaintiffs in that case sought rescission for assignment of leases,

14   alleging that the unregistered assignments were violations of § 12(a)(1.  In assessing the plaintiffs'

15   claims, the Court noted plaintiffs "were in need of a tax shelter and solicited defendant…through

16   their [plaintiffs'] accountant."  (*Id.* at 1078.)   The court also found that the offering was "limited"

17   because there were only two other investors (the plaintiffs) in addition to the defendants, and

18   plaintiffs had directly negotiated and consummated the transaction.  (*Id.*)  In denying the § 12(a)(1)

19   claim, the Court stated that this was an exempt "joint venture" because:

20       "In the case at bar, the transaction was initiated by the investors…and consummated
         through direct negotiations.  It was a modest offering extending to two people only…it
21       is clear that the transaction involved in the present case falls in the area of private
         offering.  Therefore, defendants' assignment of the lease interests to plaintiffs did not
22       violate the federal securities laws, despite the absence of a registration statement."
         (*Id.* at 1078.)
23

24   The facts in this case are nearly identical to *Vicioso*.  Plaintiffs intentionally sought a § 1031

25   exchange, and they solicited the defendants through Mr. Broda.  In addition to the Plaintiffs, the only

26   other owner was Mr. Culver.  Plaintiffs and their attorneys negotiated, structured, and set up the

27   entire Project.  Therefore, even if Plaintiffs purchased securities (which they did not), the private sale

28   exemption would have applied just as it did in *Vicioso*.

**3.    Neither Mr. Broda nor Either Moving Defendant Were Statutory "Sellers"**

Section 12 states that an individual who "offers or sells a security [in violation of § 12] shall be liable . . . to the person purchasing such a security from him." 15 U.S.C.A. § 77l.  In *Pinter v. Dahl*, 486 U.S. 622 (1988), the Supreme Court admonished against taking an overly broad interpretation of "seller," particularly in light of the "strict liability nature of the statutory cause of action."  *Id.*, at 647-652.

In the instant case, instead of being solicited by Moving Defendants or Mr. Broda, it was *Plaintiffs who solicited Mr. Broda* (Amado Depo., p. 163:9-17) because Plaintiffs were seeking IRC § 1031 exchanges (Amado Depo., p. 165:2-6).  At the time of Plaintiffs' solicitation, the Project had yet to come into existence.  (See Purcell Decl., Exh. A.)  Amado and Fish were not yet able to secure financing or purchase the Property.  (Purcell Decl., Exhs. A and D.)  Weiss had yet to draft the Project documents on behalf of all the parties.  (Purcell Decl., Exhs. B and C.)  Mr. Broda could not have been a statutory "seller" because there was no "security" at the time; he made nothing more than a referral for a, then potential, real estate development project.

There is no evidence that Mr. Broda actually "sold" anything to Plaintiffs in connection with the transactions at issue.  At best, Mr. Broda attempted to bring Plaintiffs together with Amado and Fish.  Plaintiffs' investment and attempted development of WSE did not constitute a "security."  Accordingly, as a matter of law, Moving Defendants are entitled to judgment in their favor.

**D.    PWS is Entitled to Summary Judgment for All Claims Against It Because As a Principal/Broker-Dealer It Cannot Be Liable for the Alleged Acts of An Independent Contractor Acting Without Express Or Apparent Authority**

**1.    The Doctrine of Respondeat Superior is Inapplicable to Plaintiffs' Claims**

Plaintiffs' attempt to impart liability to PWS through a theory of vicarious liability for the alleged actions or inaction of co-defendant Edward Broda.  (See, e.g., FAC p. 20:3-10.)  However, as a matter of law, PWS may not be held vicariously liable for any alleged conduct by Broda.

> *a.    Broker-Dealers Cannot Be Held Vicariously Liable for the Actions of Independent Contractors which Are Outside of the Terms of Their Agency*

A broker-dealer is not liable for all actions taken by its registered representatives.  *Hollinger v. Titan*, (9th Cir. 1990).914 F.2d 1564, 1574.  A broker-dealer may be held liable *only* if it is shown

1  that (1) The registered representative acted within the scope of his relationship with the broker-

2  dealer; or (2) If the registered representative made a statement with the actual or apparent authority of

3  the broker-dealer.  *Id.* at 1576-1597, emphasis added.

4       In *Asplund v. Selected Investments in Financial Equities, Inc.*, 86 Cal.App.4th 26 (2000), the

5  plaintiffs purchased promissory notes in a medical equipment company, Medco, from the registered

6  representative of the broker-dealer, Selected Investments in Financial Equities, Inc. ("SIFE").  *Id.*, at

7  29.  In 1997, the Securities Exchange Commission enjoined Medco from offering or selling

8  promissory notes and the investors sued to impose vicarious liability on SIFE for the registered

9  representative's action.  *Id.*, at p. 30.  The registered representative, who was an independent

10  contractor of the broker-dealer, sold the Medco securities to his customers without the approval of the

11  broker-dealer with which he was affiliated.  *Id.*, at 32-34.  The Medco securities were not offered

12  through or authorized by the broker-dealer.  *Id.*, at 34.

13       The investors attempted to hold SIFE liable for the alleged actions and fraud of the registered

14  representative.  SIFE moved for and was granted summary judgment.   The question on appeal was

15  whether a securities broker-dealer has a duty to "supervise sales by its registered representatives of

16  investments in which the broker-dealer has no economic interest."  *Id.*, at 29.

17       The court of appeal upheld the trial court's decision to grant summary judgment, holding:

18       "where, as here, the registered representative is not an employee of the broker-dealer,
     has no actual or apparent authority to sell the investment at issue, and the broker had

19       no notice of and did not in any way benefit from the transaction, the broker-dealer has
     no such duty [to supervise sales by its registered representatives of such investments]."

20       *Id.*, at 29.

21       The court found that the broker-dealer was under no federal or state obligation to supervise

22  the registered representative's sales activities which were not conducted through the broker dealer.

23  *Id.*, at 37-45.  Further, the *Asplund* court found that because the registered representative was not an

24  employee of the broker-dealer, the doctrine of respondeat superior was not applicable to the broker-

25  dealer for the transaction at issue and confirmed that the broker-dealer did not have any vicarious

26  liability for the actions of the registered representative.  *Id.*, at 45-50.

27       In a similar Federal case, *Fanelli v. Cypress Capital Corp.*, 1994 WL 725427 (N.D. CA), an

28  investor sued a broker-dealer, Cypress Capital Corp., for vicarious liability related to the alleged

actions of its former registered representative who sold him fractionalized trust deed investments,

including violations of §12(2) and various other securities laws and California statutes.  *Id.*, at *5.  As

in *Asplund*, the registered representative in *Fanelli* was authorized by Cypress to sell only approved

securities and was prohibited from engaging in securities transactions outside of the regular scope of

his employment without written authority from Cypress.  He was, however, allowed to maintain a

separate real estate business which was unrelated to the broker-dealer.  Cypress did not sell

fractionalized deed trusts, or similar investments, did not authorize its representative to sell such

investments, and was entirely unaware that the representative was selling any trust deed investments.

*Id.*, at *3.  Cypress did not have any files related to the plaintiff's investments and did not receive any

fees or commissions for the transaction.[1]  *Id.*

The *Fanelli* court held that "[n]o actual agency existed with respect to [the broker's] sale of

the subject investments."  *Id.*, at *6.  Citing to 1 *Witkin, Calif.Law (9th ed.)*, Agency, §§ 93-95 and to

*Seneris v. Haas*, 45 Cal.2d 811, 830 (1955).  The court noted that in order to find that the broker was

an agent of Cypress for the purposes of the transactions at issue the evidence must establish that: (1)

Cypress caused or allowed the investor to believe that the broker "was the agent of and had authority

to act for Cypress"; (2) the customer was justified in acting upon such a belief; and (3) in his reliance,

the investor "parted with something of value."  *Id.*

> b.   *Broda Had No Actual Authority Regarding Plaintiffs' Investments in WSE*

The undisputed evidence in this case is such that there is no basis, as a matter of law, to

impute liability to PWS for the alleged conduct of Broda.  See, e.g., *Asplund*, *supra*, at 29; *Fanelli*,

*supra*, 1994 WL 725427 at *6.  As was the case in *Asplund*, Broda was an independent contractor of

PWS and PWS neither approved, was made aware of the transactions in this lawsuit, nor were the

transactions within the scope of Broda's relationship with PWS.  The specific, undisputed facts are as

follows:

- Broda was an independent contractor of PWS and the terms of his relationship to PWS
were governed by an Independent Contractor Agreement.  (Pizelo Decl., ¶¶ 3-6);

---

[1] As in *Fanelli*, PWS did not maintain any accounts for the Plaintiffs regarding the subject transactions, nor did PWS receive any payment or commissions for the transactions at issue.  (Pizelo Decl. at ¶¶ 18-19).

- Broda was **only** authorized to offer securities that were approved by PWS.  (Pizelo Decl., ¶ 8; Exhs. 2, 4.);

- Broda was specifically prohibited from engaging in outside business activities without first notifying PWS and obtaining its approval.  (Pizelo Decl., ¶ 8; Exhs. 2,4.);

- PWS did not authorize Mr. Broda to sell Plaintiffs the investments at issue.  (Pizelo Decl., ¶¶ 16-17.);

- Mr. Broda's efforts in connection to the transactions at issue were made entirely without PWS's knowledge.  (Pizelo Decl., ¶ 17.);

- Mr. Broda treated his referral of Plaintiffs as separate from any business he conducted through PWS.  (Broda Decl., ¶ 30.);

- PWS did not ratify or in any way profit from the transactions at issue.  (Pizelo Decl., ¶ 19; Broda Decl., ¶¶ 35-36.)

The evidence makes clear that this transaction was entirely outside the scope of Mr. Broda's agency relationship with PWS.  Plaintiffs cannot put forth any evidence that: (1) PWS caused or allowed the Plaintiffs to believe that Mr. Broda was the agent of and had the authority to act on behalf of PWS for the purposes of the investments at issue; (2) that Plaintiffs were justified in acting upon the belief that Mr. Broda was an agent of PWS for the purposes of this transaction; or (3) that plaintiffs suffered any loss as a result.

The tenuous link between PWS and the transaction for which Plaintiffs complain simply does not form the basis of any duty owed to Plaintiffs by PWS and it cannot be held vicariously liable for any alleged acts of Mr. Broda.  *Asplund*, *supra*, 86 Cal.App.4th 26 (2000); *Fanelli*, *supra*, 1994 WL 725427.

      *c.*    *There Are No Facts to Support a Claim that Mr. Broda Had Implied Authority*

The undisputed evidence shows that Mr. Broda did not believe he was acting on any authority from PWS when he referred Plaintiffs to Messrs. Amado and Fish.  (Broda Decl., ¶ 30.)  Even if Mr. Broda did, somehow, believe he was acting on the authority of Pacific West, such a belief would not support a claim of implied authority.  See *Columbia Outfitting Co. v. B.H. Freeman*, 36 Cal. 2d 216, at 219 (Cal. 1950)  ("There [can] be no implied authority unless . . . the agent [] believed that he had

such authority."); *South Sacramento Drayage Co. v. Campbell Soup Co.*, 220 Cal. App. 2d 851, 856-34 (Cal. Ct. App. 1963) (holding that an agent's unilateral, subjective believe in authority cannot create actual authority).

Accordingly, Plaintiffs cannot claim that Mr. Broda was acting with or had any implied authority from PWS to refer them to Amado and Fish.

### d.   There is No Evidence to Support Ostensible Authority

"Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Cal. Civ. Code § 2317.  Ostensible authority requires "a showing of facts sufficient to raise an estoppel." *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 451 (Cal. 1945).  The essential elements of ostensible authority are " 'representation by the principal, justifiable reliance thereon by the third party, and change of position or injury resulting from such  reliance.' " *Id.*, at 452, quoting *Ernst v. Searle*, 218 Cal. 233, 237 (Cal. 1933); Rest., Agency, § 26.

### i.   Undisputed Evidence Shows that PWS Made No Representations Regarding WSE

The law is clear, even if Mr. Broda told Plaintiffs he was acting as an agent for PWS by referring them to Amado and Fish (which he did not), such statements would have been insufficient to establish that he was acting on behalf of PWS.  "The act or declaration of the agent alone can never establish ostensible authority; there must be some conduct on the part of the alleged principal." 3 Witkin, *Summary of California Law*, Agency § 144, citing to *Hill v. Citizens Nat. Trust & Savings Bank of Los Angeles*, 9 Cal.2d 172, 175 (1937).  But in circumstances in which the principal knows that the agent holds himself out as an agent, and remains silent, that conduct on the part of the principal may give rise to liability.  *Leavens v. Pinkham & McKevitt*, 164 Cal. 242 (Cal. 1912).

Here, there was no possibility that PWS would indicate to Plaintiffs by some conduct that Mr. Broda was clothed in their authority when he referred Plaintiffs to Amado and Fish.  PWS was never told by Mr. Broda about the investment at the time of the transactions at issue and did not learn about the transactions until well-after Plaintiffs invested in WSE.  (Pizelo Decl., ¶¶ 16-17.)  The Plaintiffs did not have any direct communications with PWS regarding the transactions at issue, and PWS did

1    not explicitly or implicitly suggest to Plaintiffs that Mr. Broda was acting on its behalf with respect to

2    the transactions at issue.  (Pizelo Decl., ¶ 17.)  Under these facts and in accord with the applicable

3    caselaw, Mr. Broda's alleged actions or inactions in connection with the transactions at issue cannot

4    be imputed to PWS.

5           The fact that Mr. Broda was not acting with apparent authority is also demonstrated by the

6    fact that none of Plaintiffs' account documents with PWS mention the transactions at issue.  Indeed,

7    there are no documents *at all* demonstrating PWS' involvment in the transactions at issue.  Courts

8    have found that when an investor does not receive any account statements, transaction confirmations,

9    or any correspondence whatsoever from a brokerage firm regarding a particular investment, reliance

10   on apparent authority principles is misplaced.  See, *Fanelli*, *supra*, 1994 WL 725427 at *6 (C.D. Cal.

11   1994); *Cover v. Cushing Capital Corp*, 497 A.2d 249, 252 (Pa. 1985).

12                     ii.        The Evidence Precludes a Finding of Justifiable Reliance

13          There is no evidence that Plaintiffs ever believed that PWS had anything to do with their

14   WSE investment.  PWS had no communication with Plaintiffs regarding the Project, and was not

15   aware of their involvement in the Project until much later.  (Pizelo Decl., ¶ 17.)

16          Plaintiffs cannot reasonably claim that they justifiably relied upon any ostensible authority

17   from PWS.  Plaintiffs' purchase and attempted development of the Property was structured as an

18   entirely different transaction from Plaintiffs' investments in securitized TICs through PWS years

19   earlier.

20          When the Plaintiffs invested in securitized TICs through PWS, they were provided written

21   information on the specific investments, completed a substantial number of documents, and received

22   documents from PWS evidencing their investment.  (Broda Decl., ¶¶ 15-17; Exhibit A thereto.)

23   When Mr. Broda referred Plaintiffs to Messrs. Amado and Fish, Plaintiffs did not receive any

24   documentation from PWS regarding the project or any communication whatsoever that would

25   indicate that PWS was in any manner involved in the Project.

26   **E.     Moving Defendants Are Entitled to Summary Judgment Because Plaintiffs Have Failed
          to Establish, With Any Certainty, That They Have or Will Suffer Any Damages As A
27        Result of Any of Their Alleged Claims**

28          For Plaintiffs' claims to survive summary judgment there must be triable issues of material

fact as to whether Plaintiffs have suffered any damages as a result of the alleged tortuous conduct. However, if a claim for damages is uncertain as to their nature or existence, such uncertainty is fatal. *Griffith Co. v. San Diego College for Women*, 45 Cal. 2d 501 (1955).  It is well-settled that a plaintiff must be able to show with reasonable certainty that future harm from the commission of a tort will actually accrue in the future.  *Caminetti v. Manierre*, 23 Cal. 2d 94 (1943).  The mere possibility, or even probability, that damage will result from a wrongful act does not render it actionable.  *Green Wood Indus. Co. v. Forceman Int'l Dev. Group*, 156 Cal.App.4th 766 (Cal. Ct. App. 2007).   An award for damages may not be based purely on speculation or conjecture that harm may accrue. *Commercial Union Assur. Co. v. Pac. Gas & Elec. Co*., 220 Cal. 515 (1934).

Plaintiffs' third, seventh, eighth and eleventh causes of action must fail because Plaintiffs have neither suffered any damages, nor can they establish with any degree of certainty that they will suffer any damages at any time in the future.  Here, Plaintiffs have merely demonstrated that they have invested a sum of money in real estate which they anticipated developing.   Plaintiffs have made no showing that they will not recoup their investment, will not earn a profit from their investment or that they will actually suffer any loss in the future.  Instead, Plaintiffs have merely alleged that they "face the *prospect* of a total loss of their investment."  (FAC at ¶21) (emphasis added).   Plaintiffs' damages claims are impermissibly speculative.

Plaintiffs' contentions regarding the "prospect" of future losses is based on the alleged fact that WSE is presently unable to service the principal and subordinated debt on the property.  (FAC at ¶21).  First, those alleged damages, as they are asserted, relate to a loan taken out by the Plaintiffs with a non-party, Kennedy Funding, and therefore are not "damages" related to any alleged security.  Second, Plaintiffs debt-service claim is the subject of Plaintiffs fraud cross-complaint against Kennedy in the Hawaii action.  (RJN 1.)

Plaintiffs have not put forth any facts, or even alleged any facts, sufficient to show that the Property has been foreclosed upon or that they will otherwise *actually* incur any loss.  Instead, Plaintiffs merely state that a foreclosure action has been *commenced* on the Property by Kennedy Funding, Inc.  (*Id*.)  Plaintiffs have a pending cross-complaint in the Hawaii action, against the lender, Kennedy Funding.  (See RJN 1, 2.)  If successful, Plaintiffs will avoid foreclosure on the Property

1  and may obtain rescission or money damages, in which case they will have suffered no damages

2  whatsoever.

3          The fact that a foreclosure action is pending, without more, is of no consequence.  It is pure

4  conjecture that a foreclosure action set for trial in October 2011 will ultimately result in a loss to

5  Plaintiffs.  (*See* Exhbit A to Defendants' Request for Judicial Notice.)   Plaintiffs have asserted a

6  cross-complaint for fraud which might just as easily prevent the foreclosure and yield Plaintiffs a

7  judgment of money damages.  Thus, the fact of the foreclosure lawsuit does not satisfy the necessary

8  element of certain damages.  Damage to Plaintiffs is only one possible outcome as a result of the

9  pending foreclosure action.  And even if there was potential damage, the amount of such damage is

10 entirely unknown.  As a matter of law, a theoretical possibility of damage is insufficient for

11 Plaintiffs' claims to survive.  See, e.g., *Green Wood Indus. Co*., *supra*, 156 Cal.App.4th at 776.

12 **F.     In the Alternative, Moving Defendants Are Entitled to Partial Summary Judgment of**
   **Plaintiffs' Claims**

13

14         **1.     Third Cause of Action for Violation of Section 12(a)(2) of the Securities Act of**
               **1933 and Plaintiffs' Claim of Violation of Section 12(a)(1) of the Act**

15

16         Section 12(a)(2) of the Securities Act of 1933 prohibits offering or selling a security "by

17 means of a prospectus or oral communication, which includes an untrue statement of a material fact

18 or omits to state a material fact necessary in order to make the statements ... not misleading."  (15

19 U.S.C.A. § 77l(a)(2).)   Section 12(a)(1) prohibits the sale of unregistered securities that are not

20 exempt from registration with the SEC.  (15 U.S.C.A. § 77l(a)(1).)

21         As addressed more fully in Section III(B)-(C)(2)(a), *supra*, the transactions at issue in this

22 matter were not securities and do not meet the test laid out by *Howey* and its progeny, because: (1) At

23 the time Mr. Broda referred Plaintiffs to Amado and Fish, the Project had not taken shape and

24 therefore there was no security (see Section III(B)); and (2) The Plaintiffs were active participants in

25 the development of White Sands, thereby defeating a critical element the *Howey* test, accordingly,

26 there could be no violation under either section 12(a)(1) or 12(a)(2).  (Section III(C)(2)(a)(i).)

27         Even assuming, *arguendo*, the transactions constituted securities under the *Howey* test,

28 Plaintiffs' 12(a)(1) claim fails, as a matter of law, because the transactions were proper private

offerings exempt from registration, under Section 4(2) of the Securities Act of 1933.  (Section III(C)(2)(a)(ii).)  Further, neither PWS nor Mr. Broda were statutory sellers for the purpose of §12(a)(2) of the Securities Act of 1933.  (Section III(C)(2)(a)(iii).)

Plaintiffs' 12(a)(2) claims fail because indisputable evidence demonstrates that: (1) Mr. Broda did not offer or sell the investments to Plaintiffs, rather, Plaintiffs contacted Mr. Broda and he referred them to Amado and Fish (Broda Decl., ¶¶ 21-26); (2) Mr. Broda did not make any offer to the Plaintiffs by means of a prospectus – indeed no prospectus existed at the time of Plaintiffs' investment as the project had not yet taken shape (Purcell Decl., Exh. A; Broda Decl., ¶ 27); and (3) Mr. Broda did not make any untrue statement or omission of material fact in any alleged prospectus – rather, Mr. Broda was entirely uninvolved in the formation and structuring of the Project, once he referred Plaintiffs to Amado and Fish.  (Broda Decl., ¶ 27.)

**2.      Seventh Cause of Action for Violation of Cal. Civ. Code § 3372 (Investment Advisor Liability)**

In their Seventh Cause of Action, Plaintiffs allege that Moving Defendants are liable under the provisions of the California Civil Code Section 3372.  That section provides in pertinent part:

> (a) Any person engaged in the business of advising others for compensation as to the advisability of purchasing, holding or selling property for investment and who represents himself or herself to be an expert with respect to investment decisions in such property ... shall be liable to any person to whom such advisory services are furnished for compensation and who is damaged by reason of such person's reliance upon such services
>
> (b) For the purposes of this section, the following apply: (1) A person represents that such person is an "expert" within the meaning of this section if such person represents that he or she is a "financial planner," "financial adviser," "financial counselor," "financial consultant" or an "investment adviser," "investment counselor" or "investment consultant" or that such person renders "financial planning services," "financial advisory services," "financial counseling services," "financial consulting services" or "investment advisory services," "investment counseling services" or "investment consulting services" or makes substantially equivalent representations with respect to such person's business or qualifications.
> (*Id*.)

There is *no* evidence to show: (1) Moving Defendants (or anyone affiliated with them) made such representations; (2) Plaintiffs received investment advice from Moving Defendants (or anyone affiliated with them) regarding the subject transactions; or (3) that Moving Defendnats received any

compensation for providing such advice.  The undisputed evidence is directly contrary and limited to the following:

- Plaintiffs did not enter into an Advisory contract with PWS, Mr. Broda, Aspire or Aspire Real Estate.  (Broda Decl., ¶ 19; Pizelo Decl., ¶¶13-15);

- Plaintiffs were never investment advisory clients of PWS's related advisory division (Pizelo Decl., ¶ 13; Ex. 5);

- Neither PWS, nor anyone affiliated with it, gave any investment advice to the Plaintiffs regarding the subject transactions (Pizelo Decl., ¶ ¶ 13-15);

- Neither Moving Defendant, nor any employee or independent contractor of either Moving Defendant, received any compensation from Plaintiffs or any commissions for Plaintiffs' investments in WSE.  (Pizelo Decl., ¶ 19; Broda Decl., ¶ 35.)

Given the uncontroverted evidence, Plaintiffs cannot, as a matter of law, prevail in a claim against Moving Defendants under Cal. Civ. Code § 3372.

### 3.    Eighth Cause of Action: Unfair and Deceptive Practices

California Business and Professions Code Section 17200, *et seq.* (also referred to as the unfair competition law or "UCL") prohibits unlawful competition, including an "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  (Bus. & Prof. Code, § 17200.)

### a.    *Plaintiffs' UCL Claim Is Precluded by Applicable Case Law*

Plaintiffs' UCL claim is precluded by the holding in *Bowen v. Ziasun Technologies, Inc.*, 116 Cal.App.4th 777, 788 (2004), in which a California Court of Appeal relied upon a Ninth Circuit decision,[2] to address the interplay of Federal securities violations and claims of unfair competition under the California UCL.  *Id.*, at 787-788.  The court held that the UCL does not reach unfair or fraudulent business practices in the sale of securities.  *Id.*, at 787-89.  Courts of at least 15 other jurisdictions have reached similar conclusions regarding similar statutes.  *Id.*, at 787-88.

---

[2] *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388 (9th Cir. 1988) (holding that Hawaii's unfair competition law, which mirrors California's, did not apply to securities transactions).

1    Other state courts have disagreed with the expansiveness of *Bowen*,[3] and in *In re Charles*

2   *Schwab Corp. Securities Litigation*, 257 F.R.D. 534 (ND CA 2009) a Northern District court declined

3   to follow *Bowen* in part, but only in cases in which a plaintiffs' claim is <u>not</u> predicated upon

4   violations of the 1933 or 1934 Acts. *Id.*, at 553. Such claims are precisely the basis of Plaintiffs'

5   entire case in the instant action, accordingly *Bowen* should be followed. (See FAC.) It is also worth

6   noting that the *Bowen* decision is not novel, a number of other cases previously held that the UCL is

7   not applicable to securities transactions and is preempted by federal law. See *Dietrich v. Bauer*, 76

8   F.Supp.2d 312, 351 (SD NY 1999); *Perera v. Chiron Corp.*, 1996 WL 251936 (ND CA 1996).

9    Consequently, because Plaintiffs' entire case is premised upon claims of fraud or

10   misrepresentation in violations of federal and state securities laws, under the *Bowen* decision, PWS is

11   entitled to summary judgment on this Cause of Action.

12        **b.   *Plaintiffs' UCL Claim is Barred Because Plaintiffs Cannot Demonstrate Injury***

13    Private actions under the UCL are explicitly limited to individuals who have "suffered injury

14   in fact and [] lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code

15   §17204. The absence of any injury and the absence of any evidence to support a claim that Plaintiffs

16   suffered a monetary loss or loss of property are both fatal to any claim under the UCL. *Californians*

17   *for Disability Rights v. Mervyn's, LLC*, 29 Cal. 4th 223, 227 (Cal. 2006); see also, *Peterson v. Cellco*

18   *Partnership*, 164 Cal.App.4th 1583, 1591-92 (2008) (Plaintiffs did not meet injury requirement under

19   UCL ); *Medina v. Safe-Guard Products*, 78 Cal.Rptr.3d 672, 164 (2008) (Plaintiff did not suffer loss

20   of money or property because of insurer's unlicensed status and thus had no claim under the UCL).

21    As addressed more fully in Section III(E), Plaintiffs do not claim to have suffered any

22   damage. Indeed, any damage claim Plaintiffs have is entirely theoretical. Accordingly, Plaintiffs are

23   barred from asserting any claim under the UCL.

24        **c.   *Plaintiffs' UCL Claim Is Barred as to Moving Defendants Because Plaintiffs***
            ***Have No Evidence of and Failed to Plead with Particularity Any Facts***
25           ***Demonstrating Fraud on the Part of Moving Defendants***

26    "A plaintiff alleging unfair business practices under [the UCL] must state with reasonable

27

28   _____
    [3] See *Overstock.com, Inc. v. Gradient Analytics, Inc.* 151 CA4th 688 (2007), holding that the UCL does reach securities
    transactions. *Id.*, at 716.

particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App. 612, 619 (1993), citing to 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 728, p. 176.

In the instant case, the allegations in Plaintiffs' Eighth Cause of Action are not directed at Moving Defendants, rather, the only defendant specifically mentioned in the Eighth Cause of Action is co-defendant Amado. (See FAC p. 18:11-14.) As written, the FAC contains no allegations which demonstrate that Moving Defendants, or any defendant other than Mr. Amado, in any way violated the UCL.

Further, Plaintiffs cannot put forth any evidence which demonstrates any fraud perpetrated by Moving Defendants. Neither Aspire nor PWS made *any* representations to Plaintiffs regarding their investment in WSE. (Pizelo Decl., ¶¶ 16, 17.) Indeed, PWS was entirely unaware of Plaintiffs' investment in WSE and had no communication, whatsoever with Plaintiffs regarding the investment. (Pizelo Decl., ¶ 16-18.) Accordingly, Moving Defendants are entitled to summary judgment as to this claim.

### 4.      Eleventh Cause of Action: Breach of Fiduciary Duty

Moving Defendants owed no fiduciary duty to Plaintiffs. In order to succeed in a cause of action for breach of fiduciary duty, Plaintiffs must show the existence of a fiduciary relationship, its breach, and damage caused by the breach. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App.4th 226, at 244 (Cal. Ct. App. 2007); CACI 4101. The existence of a fiduciary relationship cannot be based on conclusory statements by an alleged client or on objectively unreasonable facts. *Fox v. Pollack*, 181 Cal.App. 3d 954, 959 (1986).

Generally, in cases in which California courts impose fiduciary duties on stockbrokers, it is in connection with the customer's accounts held with the broker and generally include situations in which the brokers maintained authority to make trades on the customer's account. See, e.*g., Walsh v. Hooker & Fay,* 212 Cal.App.2d 450, 28 Cal.Rptr. 16 (1963); *Black v. Shearson, Hammill & Co.,* 266 Cal.App.2d 362, 72 Cal.Rptr. 157 (1968); *McMillan v. E.F. Hutton & Co. Inc.,* 399 F.Supp. 1153 (N.D.Cal.1975.) "[B]efore a person can be charged with a fiduciary obligation, he must either

1  knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship

2  which imposes that undertaking as a matter of law." *Committee on Children's Television, Inc. v.*

3  *General Foods Corp.*, 35 Cal.3d 197, 221 (overruled on other grounds by *Branick v. Downey Sav.*

4  *And Loan Ass'n*, 39 Cal. 4th 235 (2006)).

5        As previously discussed, Mr. Broda did not knowingly undertake anything regarding WSE; he

6  merely referred the Donahues to Messrs. Amado and Fish, after the Donahues asked Mr. Broda if he

7  was aware of any potential real estate investments through which they could make a 1031 Exchange.

8  (Broda Decl., ¶¶ 24-26, 29-34.)  Mr. Broda did not at any time enter into a relationship with Plaintiffs

9  regarding WSE.  Nor did Plaintiffs provide Mr. Broda with any compensation for referring them to

10  Amado and Fish.  (Broda Decl., ¶ 35)

11        Neither Moving Defendant ever agreed to act on behalf of Plaintiffs in connection with the

12  transactions at issue.  (Pizelo Decl., ¶¶ 16-18.)  There is no evidence that Moving Defendants ever

13  controlled Plaintiffs' Property, which is a key factor in a fiduciary relationship.  *Apollo Capital Fund,*

14  *supra*, 158 Cal. App.4th at 246 ["In this case, the investors were not [the broker's] customers and no

15  fiduciary relationship could arise merely from the fact that [it] was a licensed broker." *Id.*, at 245].

16  PWS was not in any way involved in the transactions for which Plaintiffs claim.  (Pizelo Decl., ¶¶ 13,

17  17-18.)

18        Plaintiffs did not maintain any accounts with either Moving Defendant through which the

19  investments at issue were made.  (Pizelo Decl., ¶ 18; Broda Decl., ¶ 34.)  None of the plaintiffs held

20  investment advisory accounts with Moving Defendants or with any agent of Moving Defendants.

21  (Pizelo Decl., ¶¶ 13-15; Broda Decl., ¶ 19.)  Indeed, Moving Defendants do not even provide

22  investment advisory services.  (Pizelo Decl., ¶ 13.)  In the case of PWS, those services are provided

23  by a separate entity, non-party PWS Financial Consultants, Inc., through which Plaintiffs have never

24  conducted business.  (Pizelo Decl., ¶ *Id.*)  Accordingly, there are no facts evidencing a fiduciary

25  relationship between Moving Defendants and Plaintiffs, regarding the transactions at issue.

26        Plaintiffs attempt to claim that Moving Defendants breached a fiduciary duty to Plaintiffs on a

27  theory of vicarious liability, claiming that Mr. Broda acted as an investment advisor.  (See FAC ¶¶

28  125-127.)  The evidence demonstrates that Mr. Broda did not owe a fiduciary duty to Plaintiffs in

1  connection with the transactions at issue: Mr. Broda was not licensed as a registered investment

2  advisor; he was not an investment advisor to Plaintiffs; and Plaintiffs did not have an investment

3  advisory agreement, or any agreement whatsoever, with Mr. Broda in connection to the transactions

4  at issue.  (Broda Decl., ¶ 19.)

5         Even if the court somehow concludes that there was a fiduciary duty between Mr. Broda and

6  Plaintiffs in connection with the underlying transactions, there is no evidence in the record that Mr.

7  Broda breached that duty.  As previously established, Mr. Broda merely referred Plaintiffs to co-

8  defendants Amado and Fish after they expressed an interest in identifying real property through

9  which they could affect a 1031 exchange.  In doing so, Mr. Broda at all times acted in good faith and

10  treated Plaintiffs with due care.  In other words, Broda met his "duty."  No evidence put forth in this

11  matter establishes that Mr. Broda withheld any information from, or in any manner misled, Plaintiffs.

12         As a result, Plaintiffs' claim for breach of fiduciary duty lacks factual and legal support;

13  Moving Defendants are entitled to summary judgment as a matter of law.

14                              **IV.   <u>CONCLUSION</u>**

15         For the forgoing reasons, defendants PWS Securities, Inc. and Aspire Investments, Inc.

16  request that the Court grant their motion for summary judgment as to all of the claims asserted in

17  Plaintiffs' First Amended Complaint.

18                                        Respectfully submitted,

19  DATED:  December 23, 2010            DILLINGHAM & MURPHY, LLP
                                        DENNIS J. KELLY
20                                       HSIAO C. (MARK) MAO
                                        PATRICK J. SUTER
21                                       BROOKE S. PURCELL

22

23                              By:_____**/s/ Dennis J. Kelly**_____
                                        Attorneys for Defendants
24                                       PACIFIC WEST SECURITIES, INC.,
                                        ASPIRE REAL ESTATE, INC., ASPIRE
25                                       INVESTMENTS, INC., and EDWARD S.
                                        BRODA

26

27

28